Annette SEXSON, et al., Plaintiffs,

v.

Beurt R. SERVAAS, et al., Defendants.

No. IP 91–451–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

July 21, 1993.

Stephen Laudig, Laudig & George, Kevin McShane, McShane & Inman, Marilyn A. Moores, Cohen & Malad, Indianapolis, IN, for plaintiffs.

Wayne C. Ponader, Jeffrey S. Koehlinger, Bose McKinney & Evans, Indianapolis, IN, for defendants.

### ENTRY FROM CHAMBERS

BARKER, District Judge.

Any litigant in a court of the United States may legitimately expect that the presiding judge will be impartial and will listen to and evaluate the merits of any arguments presented without prejudice or bias. So important is this expectation to American notions of justice that judges must not only be impartial adjudicators, they must also avoid activities which create the appearance of bias and thereby undermine the integrity of the courts. Plaintiffs, through their counsel, Stephen Laudig ("Laudig") and Kevin McShane

("McShane") (collectively "counsel"), believe that the presiding judge in this matter does not appear impartial owing to her participation in two civic groups in Indianapolis. Pursuant to 28 U.S.C. § 455(a), Plaintiffs present this judge with a Motion to Disqualify. Having carefully considered Plaintiffs' arguments, this judge concludes that they are groundless and denies their motion.

## I. BACKGROUND

Within days after an Indianapolis newspaper gave headline coverage to a judicial misconduct complaint which another local attorney filed against this judge, *see In Re Complaint Against District Judge Sarah Evans Barker,* No. 93–7–372–5, Douglass R. Shortridge, Complainant ("Shortridge complaint"), Plaintiffs filed their Motion to Disqualify based on substantially the same reasons as those outlined in the Shortridge complaint. In that matter, Shortridge protested this judge's having presided over a civil rights suit involving the City of Indianapolis while holding board memberships on the Greater Indianapolis Progress Committee, Inc. ("GIPC") and the Indiana Fiscal Policy Institute ("IFPI"). The Chief Judge of the Seventh Circuit Court of Appeals summarily dismissed the Shortridge complaint, finding it to be frivolous in part and failing to allege conduct which is prejudicial to the effective and expeditious administration of the business of the Courts. *See* Memorandum and Order, *In Re Complaint Against District Judge Sarah Evans Barker,* No. 93–7–372–5 (May 26, 1993).

■ The Plaintiffs filed their motion to disqualify asserting the following facts:

(1) the presiding judge in this case is a member of the Board of Directors of the GIPC;

(2) the presiding judge in this case is a member of the Board of Governors of the IFPI;

(3) the judge presiding over this case was appointed to the Board of Directors of GIPC by the current Mayor of Indianapolis, Stephen Goldsmith ("Mayor Goldsmith"), at the recommendation of William H. Hudnut ("Mayor Hudnut"), who is a defendant in his official capacity as mayor;

(4) the judge presiding over this case has attended meetings of the GIPC Board of Directors;

(5) Stephen West ("West"), a member of the Marion County City–County Council, is also a member of the Board of Directors appointed by Mayor Goldsmith;

(6) Mary B. Moriarty ("Moriarty"), a member of the Marion County City–County Council, is also a member of the Board of Directors of GIPC appointed by Mayor Goldsmith;

(7) Dan Seitz ("Seitz"), a member of the firm of Bose, McKinney and Evans,[1] sits as a member of the Board of Directors of the IFPI;

(8) The Board of Directors of IFPI elects the Board of Governors, which serves as an advisory council to the Board of Directors and performs such duties and functions as from time to time may be prescribed by the Board of Directors.

*See* Verified Motion for Disqualification, at 1–2. The gravamen of the Plaintiffs' argument is that this judge's nomination and appointment to the GIPC Board of Directors and her participation in the named civic organizations establish that "the impartiality of the judge presiding over this case might reasonably be questioned." *See id.,* at 2–3 and ¶ 9; Memorandum in Support of Verified Motion for Disqualification, at 1.

In response, the Defendants argue that the motion should be denied because membership on the aforementioned boards is specifically permitted by Canon 4 of the Code of Judicial Conduct and because "the foregoing assertions, individually or as a whole, fail to

---

1. The Plaintiffs note that this judge was once a member of the law firm of Bose, McKinney and Evans (nearly fifteen years ago, before Seitz joined that firm), but are careful to state in their motion:

This fact was know [sic] to the plaintiffs and their counsel since the inception of this case.

The Plaintiffs concede that the judge's former membership in the firm would not ordinarily, in and of itself, require disqualification. Seitz's membership in Bose, McKinney and Evans is thus a non-issue, and the Plaintiffs' use of "make-weight" arguments in their motion is sadly transparent.

establish any doubt whatsoever, much less a 'reasonable' one, about this judge's impartiality in the present case." Defendant's Response Brief, at 2. The Defendants insist that the Plaintiffs' "allegations of partiality are not even sufficient, let alone the actual facts," and conclude that the Plaintiffs have offered no evidence that any of the foregoing "associations of the judge and the parties to this case are likely to cause or even create the appearance of partiality." Defendants' Response Brief, at 3, 9.

## II. DISCUSSION

Plaintiffs base their motion on 28 U.S.C. § 455(a). *See* Plaintiffs' Verified Motion for Disqualification, at 1; Plaintiffs' Reply to Defendants' Response to Plaintiffs' Motion to Disqualify, at 1–3. That subsection reads as follows:

**Disqualification of justice, judge, or magistrate**

(a) Any justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

28 U.S.C. § 455. The purpose of this provision is to uphold public confidence in the integrity of the judiciary.[2] The simple maxim that "appearances matter" needs little explanation in a judicial setting. It suffices to note Justice Black's observation many years ago in *In re Murchison*, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955), that "to perform its high function in the best way, 'justice must satisfy the appearance of justice.'" *Id.* at 136, 75 S.Ct. at 625 (citation omitted).

 Counsel for Plaintiffs advise this judge to adopt what they refer to as the "*Liljeberg* test" for analyzing judicial partiality under § 455(a). In their Reply brief, they explain:

The Defendants do not dispute the relationship between the presiding judge in *Sexson* nor do they attempt to describe why, under to pertinent [sic] *Liljeberg v.*

*Health Services Corp.*, 486 U.S. [847, 864], 100 L.Ed.2d 855, 875, 108 S.Ct. [2194, 2204] [1988] test, "an objective disinterested, lay observer, fully informed of the facts underlying the grounds on which recusal was sought, would [not] entertain a significant doubt about the judge's impartiality."

Counsel for Plaintiffs also cite a case out of the Eleventh Circuit, *Parker v. Connors Steel Co.*, 855 F.2d 1510 (11th Cir.1988), *cert. denied*, 490 U.S. 1066, 109 S.Ct. 2066, 104 L.Ed.2d 631 (1989), as authority for this standard. Their reference to *Liljeberg* is difficult to understand, however, given that the Supreme Court never articulated such a test in that opinion. *See Liljeberg v. Health Services*, 486 U.S. 847, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988). This comes to naught, however, since the Seventh Circuit has adopted the same test. *See, e.g., Pepsico, Inc. v. McMillen*, 764 F.2d 458, 460 (7th Cir.1985), *citing, SCA Services, Inc. v. Morgan*, 557 F.2d 110, 116 (7th Cir.1977) (the "*Pepsico* test"). The proper inquiry under § 455(a) is "whether an objective, disinterested observer, fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt that justice would be done in the case." *Id.* Because the application of this test proceeds from the perspective of a "disinterested" and "fully informed" observer, the judge makes the disqualification decision considering a truthful and thorough examination of the relevant facts and circumstances, not merely those contentions and innuendos played out by counsel and the local media. *See, e.g., Hall v. Small Business Admin.*, 695 F.2d 175, 178–79 (5th Cir.1983).

At the outset, the Court notes that disqualification questions are often considered in light of whether the disqualification issue is a "close call." *Hadler v. Union Bank and Trust Co. of Greensburg*, 765 F.Supp. 976, 978 (S.D.Ind.1991). This one isn't. Application of the *Pepsico* test to the facts which Plaintiffs have identified leads to the inevit-

---

**2.** *See* Judicial Disqualification: Hearing on S. 1064 Before Subcomm. on Improvements in Judicial Machinery of the Senate Comm. on the Judiciary, 93d Cong., 1st Sess. 1, 75 (1971 and 1973) (noting that disqualification "enhances public confidence in the judicial system."); *see also Potashnick v. Port City Constr. Co.*, 609 F.2d 1101, 1111 (5th Cir.), *cert. denied*, 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980).

able conclusion that their arguments are groundless, if not frivolous, and bear little relationship to modern notions of the role of judges in our society.

The words of the Chief Judge of the Seventh Circuit, William J. Bauer, shed a valuable perspective on the merits of Plaintiffs' arguments. In response to the Shortridge complaint, which was brought under a different federal provision but alleged nearly identical facts, Judge Bauer explained:

> Canon 5 of the Code of Judicial Conduct provides that a judge may participate in civic organizations. Nothing in the complaint establishes why the judge should be prohibited from being in these organizations [i.e. GIPC & IFPI]. For example, there is no allegation that these organizations are involved in frequent litigation. Based on the stated purposes of the organizations, it would be hard to imagine the organizations as parties in law suits. The judge should be lauded for taking time from her busy schedule to participate in these civic organizations which promote the commonweal....

> In taking the oath of office as a judge, a person does not agree to be a hermit removed from the world. Traditionally, societies choose persons who are leaders of society to be judges. It would make no sense to prohibit them from using leadership and other abilities in helping our society so long as it does not create a conflict of interest or violate other provisions of the Code of Conduct. That a judge knows someone does not require recusal. An active lawyer who takes the bench will always know a good many of the lawyers that appear in court and is also likely to know some persons who are parties or who work for corporations or agencies who are parties. The judge must look to the strength of the relationship to decide recusal. I might add that a judge who does not know the difference between his or her friends and the job of being a judge does not deserve to be a judge or to have friends.

*In Re Complaint Against District Judge Sarah Evans Barker,* No. 93–7–372–5, Judicial Council of the Seventh Circuit, at 2.

### The GIPC and IFPI

This judge serves on the GIPC Board of Directors along with ninety-three (93) other Directors, each serving for a one-year term. Meetings ordinarily occur on a monthly basis.[3] The individuals chosen to serve on the Board are a diverse group but share two common characteristics: (1) a commitment to public service, and (2) a record of achievement in their chosen professions. They are community leaders who, consistent with GIPC's mission statement, seek to make Indianapolis a better place to live. According to its articles of incorporation, GIPC's purpose is "[t]o promote the growth and development of the City of Indianapolis by educational, scientific and charitable means...." GIPC Articles of Incorporation, Art. II, § 1. As the Defendants correctly explain: "GIPC is a civic organization to promote the interests of the city and its citizens; it is not an arm of the city government." Defendant's Response Brief, at 5. The Articles of Incorporation specifically prohibit bestowing private benefits on its members, directors, or officers:

> **No private benefits.** No money or property received or held by the corporation shall ever inure, directly or indirectly, to the private benefit of any member, director or officer of the corporation, or of any other person whomsoever; no member, director or officer of the corporation and no other person whosoever shall receive any pecuniary benefit from the corporation except such compensation as may be allowed for services actually rendered.

GIPC Articles of Incorporation, Art. III, § 1.

Plaintiffs' description of GIPC makes it out to be nothing less than a school of political barracudas: "It is a politically powerful savvy group of community movers and shakers designed to influence public policy in order to assist the mayor's political agenda." Plaintiffs' Reply Brief, at 3. To put it mildly,

---

3. This judge was initially appointed in 1992 and was reappointed in 1993. The press of judicial duties has limited her ability to attend the meetings; as a result, she has attended only two meetings during that time period.

Plaintiffs' view is far from "fully informed". It is not exactly clear whether Plaintiffs are saying that GIPC itself is "politically powerful" or whether the individual members of the Board are so endowed; either way, their analysis fails. First of all, GIPC itself has no inherent political power. It funds no municipal projects, contributes to no political campaign or cause, and makes no public policy decisions—it merely provides advice and volunteer support to the City of Indianapolis regarding matters of public concern.[4] A judge's association with such a group in no way creates an appearance of partiality. Only when viewed through a lens tainted with a Machiavellian hue does the GIPC appear as Plaintiffs describe it; such a view is neither objective nor reasonable. Plaintiffs have imputed a degree of politization to the GIPC that simply does not exist.

To the extent that Plaintiffs argue that this judge's affiliation with prominent and powerful persons in the Indianapolis community allows her impartiality reasonably to be questioned, the Plaintiffs again stray far off the mark. If merely knowing or being associated with important people were enough to require a judge to disqualify herself from a case, there would be few judges to hear cases, excepting those who were political and social eunuchs. Certainly, many charitable activities would be off-bounds as such organizations routinely turn to community leaders for assistance in the form of board service. Where Plaintiffs' logic leads is not clear. Might a judge's impartiality reasonably be questioned through service on behalf of any charitable civic or religious group simply because it brings her into association with other people in the community? What if she were a member (and only a member) of the Kiwanis Club, or Rotary, or Optimists, or the Lions Club; would she have to step aside on *any* case involving *any* interest of *any* other member? What if prominent people were members, elders, or deacons of a judge's church? Would the judge then have to forsake his or her religious convictions to avoid such an affiliation? What if her children were of school age; would she have to recuse

on all issues relating to education or to children, or on all cases involving school employees? The Seventh Circuit already has spoken to this issue in the context of friendships with lawyers, although the same could be said of any friendship or acquaintance:

> In today's legal culture friendships among judges and lawyers are common. They are more than common; they are desirable. A judge need not cut himself off from the rest of the legal community. Social as well as official communications among judges and lawyers may improve the quality of legal decisions. Social interactions also make service on the bench, quite isolated as a rule, more tolerable to judges. Many well-qualified people would hesitate to become judges if they knew that wearing the robe meant either discharging one's friends or risking disqualification in substantial numbers of cases. Many courts therefore have held that a judge need not disqualify himself just because a friend—even a close friend—appears as a lawyer.

*United States v. Murphy*, 768 F.2d 1518, 1537 (7th Cir.1985), *cert. denied*, 475 U.S. 1012, 106 S.Ct. 1188, 89 L.Ed.2d 304 (1986). The commentary to Canon 4 of the Code of Judicial Conduct echoes this reasoning: "Complete separation of a judge from extrajudicial activities is neither possible nor wise; a judge should not become isolated from the community in which the judge lives."

What has been said about the GIPC applies with equal force to the IFPI and this judge's relationship with Mr. Seitz. The IFPI is an organization dedicated to furthering the public interest, which describes itself in the following terms: "The [IFPI] is a private, non-profit governmental research organization.... The Institute does not lobby, support or oppose candidates for public office, or take positions on ballot issues. Instead, it relies on the presentation of objective research evidence as the basis for sound state fiscal policy." Indiana Fiscal Policy Institute Publication, at 2. Plaintiffs recite

---

4. It bears noting that this judge is not a state or city government employee or even a resident of Marion County, paying no tax to the City of Indianapolis, and receiving no personal benefit from increased or decreased City expenditures.

the following facts which they believe warrant disqualification:

> The judge also sits on the Board of Governors of the Indiana Financial [sic] Planning Institute, a non-profit organization which studies and makes recommendations on governmental fiscal activities. Dan Seitz, a member of the law firm of Bose, McKinney and Evans, is a a [sic] member of the IFPI Board of Directors. The law firm of Bose, McKinney and Evans, represents all the defendants in this case, with the exception of Defendant Faye I. Mowery, and is the judge's former law firm.

Plaintiffs' Memorandum in Support of Verified Motion for Disqualification, at 1. This judge has never heard of the Indiana Financial Planning Institute. Presumably, Plaintiffs mean the Indiana Fiscal Policy Institute, which is a privately-financed public-policy think-tank and nothing more. It has a non-meeting Board of Governors and, other than lending support by name, this judge has had no other involvement with it. In short, the IFPI engages in no activities that compromise the integrity of the Court or the impartiality of this judge. Plaintiffs' allegation is frivolous on its face.

That said, the precise nature of Plaintiffs' claim is still not entirely clear. Counsel state in their reply brief that their motion "is based upon *legal* relationships between the presiding judge and defendants, witnesses, and lawyers in the defendants' lawyers law firm, not upon 'mere acquaintance or friendship'." (emphasis added). Counsel, however, have neither defined the term "legal relationships", nor have they framed their argument in such a way that provides any insight into its meaning as they have used it. Instead, this judge must attempt to divine its meaning from surrounding circumstances and related arguments, no easy task given that, as has already been established, there are no "legal relationships" here, only social, associational relationships. Even a cursory review of the *facts* indicates that this judge is not legally bound to any of the parties or their respective positions in this action, and the appearances could not reasonably be viewed to the contrary. Moreover, the GIPC and IFPI have not taken a position on the underlying merits of this litigation, and in fact, neither organization, to this judge's knowledge, has ever taken a stance on any dispute which is pending before a court. This means that both GIPC and IFPI are completely neutral in this matter. Counsel have not explained how neutrality equates with bias, but this judge need not await their reasoning, common sense dictates that it does not.[5]

If not the policies of the respective boards, then what "legal relationships" do Plaintiffs have in mind when they frame their contention? To repeat: counsel have complained of the appointment of this judge to two not-for-profit, civic boards, the first appointment having been made by the Mayor of Indianapolis acting in his official capacity, which is, significantly, the same, nominal (as in "in name only") capacity in which he appears as a party in the pending litigation; the judge serves on this committee with two other persons, both of whom are also nominal parties and/or possible witnesses[6] in the litigation.

---

5. Counsels' method of putting allegation before factual inquiry is reminiscent of the trial in **Alice in Wonderland**:

> [T]he White Rabbit blew three blasts on the trumpet, and then unrolled the parchment scroll, and read [the charge] as follows:—
> "The Queen of Hearts, she made some tarts,
> All on a summer day;
> The Knave of Hearts, he stole those tarts,
> And took them quite away!"
> "Consider your verdict," the King said to the jury.
> "Not yet, not yet!" the Rabbit hastily interrupted. "There's a great deal to come before that!"....
> "Give your evidence, said the King; "and don't be nervous, or I'll have you executed on the spot."....

> "No, no!" said the Queen. "Sentence first—verdict afterwards."
> "Stuff and nonsense!" said Alice loudly. "The idea of having the sentence first!"
> "Hold your tongue!" said the Queen, turning purple.
> "I won't!" said Alice.
> "Off with her head!" the Queen shouted at the top of her voice.

Lewis Carroll, **Alice in Wonderland** 139–40, 141–42, 157–58 (Mount Vernon: Peter Pauper Press).

6. The two persons whom plaintiffs specifically name as those with whom this judge allegedly has a personal relationship based on their joint membership in GIPC are City–County Councilors West and Moriarty. To this judge's knowledge, if

The second board to which this judge was elected is another civic, not-for-profit entity on which a member of defense counsel's law firm also serves.[7] Neither board is a party to this case nor is Mr. Seitz a party to it, nor is he the lawyer responsible for litigating this case. The Mayor is sued as the chief executive of the City of Indianapolis. There is simply no basis by which it could reasonably be argued, never mind established, that this judge, by virtue of these board memberships and relationships, has any financial, fiduciary, contractual, statutory or other such "legal" bond to any party or person or interest which is in any way directly at stake in this litigation. Just as clearly, there is no moral or social bond between this judge and any party or attorney or any predisposition to any specific outcome of the issues in dispute based on these relationships, nor could any

be imputed or inferred in light of the established and uncontroverted facts.

As Judge Tinder explained in *Spangler v. Sears, Roebuck & Co.*, 759 F.Supp. 1327 (S.D.Ind.1991), "[a] motion for recusal must identify cold, hard facts which create the appearance of partiality." *Id.* at 1329. Of the individual relationships which Plaintiffs have identified—Mayor Hudnut, Mayor Goldsmith, Councilors West and Moriarty, and Attorney Seitz—not one even remotely approaches the kind of "extensive personal contacts" which warrant disqualification. *See Murphy*, 768 F.2d at 1538 (noting that independent observer would be troubled that judge did not disqualify himself in a case involving political corruption where he had secret plans to vacation with the prosecutor).[8] The relationships complained of in this cause are even more tenuous than those in *In*

she has ever met either of them, she does not actually know them, nor has she had any direct encounter with them, whether in the course of or outside GIPC activities. So, besides not having any "legal relationship" with them, this judge has had no social relationship with them.

7. *See* footnote 1, *supra,* page 476.

8. In addition, consider the comments of Judge Tinder in *Mason v. Hudnut*, No. 87–37–C, slip opinion, (date unknown) (S.D.Ind.1993):

As required by 28 U.S.C. § 455, I have evaluated whether I am required to recuse myself because of Mr. Goldsmith's involvement in this case. *See In re Beard*, 811 F.2d 818, 827 (4th Cir.1987) ("§ 455 places a duty directly on the judge to evaluate his own actions"); *Johnson v. Trueblood*, 629 F.2d 287, 290 (3rd Cir.1980) ("district judge ... raised, sua sponte, whether he should recuse himself pursuant to 28 U.S.C. § 455(a)"), *cert. denied*, 450 U.S. 999 [101 S.Ct. 1704, 68 L.Ed.2d 200] (1981). I consider Mr. Goldsmith to be a friend, however, no partiality either in favor of or against Mr. Goldsmith has been created by this association. A judge may have friends without having to recuse himself from every case in which the friend appears as counsel, party or witness. *See, e.g., Baker v. Detroit*, 458 F.Supp. 374, 375 (E.D.Mich.1978) (judge's friendship with mayor, who was nominal party to lawsuit, did not require recusal); *see also Parrish v. Bd. of Comm'rs of the Alabama State Bar*, 524 F.2d 98, 104 (5th Cir.1975) (the fact that judge was acquainted with witnesses and defense counsel did not require recusal), *cert. denied*, 425 U.S. 944 [96 S.Ct. 1685, 48 L.Ed.2d 188] (1976); *Hunt v. Mobil Oil Corp.*, 557 F.Supp. 368, 377 (S.D.N.Y.1983) (judge's friendship with plaintiffs' former counsel, who had a falling out

with plaintiffs, did not prejudice judge against plaintiffs), *aff'd* 742 F.2d 1438 (2nd Cir.1983); *Miller Indus. Inc. v. Caterpillar Tractor Co.*, 516 F.Supp. 84, 87 (S.D.Ala.1980) (judge who had pooled investments with former law partners need not recuse himself from case where former law partners' law firm served as plaintiff's counsel).

If mere friendship as a result of working together in the legal community could require disqualification "judges could hope to preside without challenge solely in communities in which they are strangers." *In re United States*, 666 F.2d 690, 697 (1st Cir.1981). Courts routinely hold that such friendships are not cause for disqualification. *See, e.g., United States v. Masters*, 1988 W.L. 79612, No. 88 CR 0500 (N.D.Ill. July 25, 1988) ("Judges are routinely called upon to assess the credibility of lawyers whom they have supervised or they have been supervised by in government service"); *United States v. Feldman*, 1985 W.L. 4525, No. 81 CR 747 (N.D.Ill. December 4, 1985) ("Many well-qualified people would hesitate to become judges if they knew that wearing the robe meant either discarding one's friends or risking disqualification in a substantial number of cases"); *Smith v. Pepsico, Inc.*, 434 F.Supp. 524, 525–26 (S.D.Fla.1977) (judge refused to recuse from case in which former law clerk served as plaintiff's attorney). There is no presumption that a friendship forged in service to the law will overwhelm the unbending requirements of the law. There is nothing "out of the ordinary" about my friendship with Mr. Goldsmith that would require my disqualification in this case. *See Feldman*, 1988 W.L. at 4525.

Moreover, the complaint, as it now stands, does not assert a claim against Mr. Goldsmith in his personal capacity and, therefore, he

*re Mason,* 916 F.2d 384 (7th Cir.1990), where the court held that a judge's preappointment financial contribution of $100 to the campaign of a defendant is insufficient to warrant disqualification under § 455(a). Given that Mr. Laudig filed the original motion for disqualification and argued the *Mason* case before the Seventh Circuit, it is reasonable to assume that he is familiar with it. In contrast to that case, the allegations made here are based on nothing more than the most general affiliations. Merely knowing other persons, including the politically powerful, and being associated with them can take place in many ways, and that alone creates neither an impropriety nor an appearance of partiality. Indeed, aside from relegating judges to an existence akin to that of a monk, they are unavoidable.[9]

## III. CONCLUSION

■ The eminent legal scholar and teacher Louis Schwartz once explained: "To be only a lawyer is to be half a lawyer." The same could be said of judges. Taking the bench is a form of public service which does not operate to exclude all other forms of social and civic life. To adopt the view which counsel urges upon this judge is not only inadvisable, it is dangerous. What could be more inimical to the sound application of contemporary standards of justice than to banish those who must administer it to an uncontemporary existence? As another judge of this court aptly noted:

> A judge must have neighbors, friends, and acquaintances, business and social relations, and be a part of his day and generation.... [T]he ordinary results of such associations and the impressions they create in the mind of the judge are not the personal bias or prejudice to which the recusal stature refers.

*United States v. Kehlbeck,* 766 F.Supp. 707, 712 (S.D.Ind.1990), *quoting, Pennsylvania v.*

*Local 542, Int'l Union of Operating Engineers,* 388 F.Supp. 155, 157 (E.D.Pa.1974). It is this judge's view that those who take the bench not only have the right to serve the community in ways other than judging, they have an obligation to do so, consistent of course with the Canons of Judicial Conduct. In the same way, a judge's duty not to recuse when confronted with a motion that has little basis in reality, both factual and legal, is as strong as the duty to recuse when his or her impartiality might reasonably be questioned. *See Hadler,* 765 F.Supp. at 978 ("[A] judge once having drawn a case should not recuse himself on an unsupported, irrational, or highly tenuous speculation.") (citation omitted). The efficient administration of justice would be dealt a serious blow if it were otherwise. Counsel, on behalf of the Plaintiffs, have filed a motion which falls squarely within the former category. The Plaintiffs' Motion to Disqualify is accordingly DENIED.

It is so ORDERED.

---

would not have a personal financial stake in this litigation. In any case, I find that the obligations of the law and the office which I hold are, in fact—and are presumed to be—stronger than the bond of friendship. Based on the Seventh Circuit's prior ruling in this case and on the provisions of 28 U.S.C. § 455 and cases interpreting that statute as well as 28 U.S.C. § 144, I conclude that there is no basis for me to disqualify myself on the

grounds that my impartiality might reasonably be questioned.

9. The most cursory review of any reliable judicial directory discloses the veritable smorgasbord of activities in which other federal judges throughout the country involve themselves, presumably properly under all the applicable standards, activities not substantially unlike those challenged here.