PETERSON, Bart, et al., Appellant
(Defendant Below),

v.

BORST, Philip C., Appellee
(Petitioner Below).

Boyd, Rozelle, et al., Appellants
(Intervening Defendants
Below),

v.

Sadler, Doris Anne, et al., Appellees.

No. 49S02–0302–CV–71.

Supreme Court of Indiana.

March 17, 2003.

William R. Groth, Geoffrey S. Lohman, A. Scott Chinn, Anthony W. Overholt, April E. Sellers, Fred R. Biesecker, Michael A. Wukmer, Indianapolis, IN, Attorneys for Appellants.

William Bock, III, Mark J. Colucci, Matthew T. Klein, Indianapolis, IN, Attorneys for Appellees.

Edward W. Harris, III, Maggie L. Smith, Thomas F. O'Gara, Indianapolis, IN, Attorneys for Amicus Curiae.

BOEHM, Justice.

■ Appellees, Borst, et al., have filed a motion for my recusal in this case. For the reasons given, the motion is denied.

The stated ground for the motion is that in November, 2001 I was appointed by the Mayor of the City of Indianapolis as a member and chair of a newly created Cultural Development Commission (CDC). At the outset, let me state that if I agreed with the motion, I would resign from the CDC, not recuse in this case. For the reasons stated, I do not believe I need to take that step.

The Commission was created by resolution of the Capital Improvements Board (CIB). It is funded by five-million-dollar grant from private sources and one million dollars per year over five years from the CIB. Under its authorizing resolution, the Commission is "responsible for the City's overall cultural development policy" and is "accountable to" both the CIB and the private funding sources. All members of the Commission serve without compensation, and all are appointed by the Mayor, who is a plaintiff and an appellant in this case. The Commission is not a partisan agency. From private conversations with two of the other eight Commissioners whom I knew before the Commission was formed, I understand that they consider themselves generally to be disposed to the Republican Party. I know either from public sources or newspaper reports that one other is identified as a Republican and one as a Democrat. I have no understanding of the political party preferences of the other four.

Once appointed to the CDC, I accepted the obligation to discharge both that office and the office of Justice of this Court as best I can. I believe I also undertook to subordinate my CDC role to that of a Justice if the two conflict. A judge has a "duty to sit" under Canon 3B(1) and not to recuse "unless disqualification is required." That is a particularly powerful consideration for Justices of Supreme Courts, where there is no procedure to replace a recused Justice, and a recusal is in practical terms a vote for the party who prevailed in the last court. As Chief Justice Rehnquist put it:

> While it can seldom be predicted with confidence at the time that a Justice addresses himself to the issue of disqualification whether or not the Court in a particular case will be closely divided, the disqualification of one Justice of this

Court raises the possibility of an affirmance of the judgment below by an equally divided Court. The consequence attending such a result is, of course, that the principle of law presented by the case is left unsettled. The undesirability of such a disposition is obviously not a reason for refusing to disqualify oneself where in fact one deems himself disqualified, but I believe it is a reason for not "bending over backwards" in order to deem oneself disqualified.

*Laird, Secretary of Defense v. Tatum,* 409 U.S. 824, 837–38, 93 S.Ct. 7, 34 L.Ed.2d 50 (1972). I agree, and for that reason believe resignation from the CDC is the appropriate alternative if there is a problem in my continued service on the CDC while sitting on this case.

The motion cites three relevant Canons of the Indiana Code of Judicial Conduct. In my view the first two present no issue requiring extensive discussion. Canon 4C(2) of Indiana's Code specifically provides that a judge may serve on a governmental commission concerned with improvements of the law, the legal system or the administration of justice without permission of the Indiana Supreme Court. A judge may serve on any other governmental commission only with that permission. Service on the CDC requires that permission, and permission was requested and received before I accepted the appointment. Canon 4C(3)(a)(ii) provides that a judge is not to serve as an "officer, director or non-legal advisor" to an organization if it is "likely" that the organization "will be engaged frequently in adversary proceedings" that might get into the judge's court. I agree that service as a Commissioner of the CDC is subject to the spirit if not the letter of this provision, but I do not agree that service on the CDC comes close to violating it. Although there is always the possibility of litigation over some action of the CDC, I considered this issue before taking the appointment and believed then, and believe now, that there is no likelihood that the CDC will be engaged "frequently" in any court battles.

The motion also cites Canons 3E(1)(c) and (d)(iii), which embody the familiar and often difficult to apply prohibition against a judge sitting on a case where the judge's "impartiality might reasonably be questioned." The substance of this case is the Marion County Democratic Party against the Marion County Republican Party, and the issue is claimed to affect the parties' relative strength in the City–County Council. Litigation over this issue inevitably raises some tension with the Judicial Code. All Justices on this Court were appointed by the Governor. In every case the appointing Governor has selected someone with at least some history of support for the Governor's political party. The judges of the Marion Superior Court trial court, whose divided decision Borst supports, are selected through a process in which the party apparatus is very significant, if not usually controlling. Unlike appellate judges, Marion Superior Court judges are subject to reelection through the same party-dominated process every six years. This is no fault of any judge. Someone has to resolve these disputes if the political process produces either no result, as here, or a result in violation of the federal or state constitution. The courts are forced to deal with the issue if the other two branches do not. I point out the inherent difficulty in addressing redistricting litigation because I believe any objective observer would find these issues significantly more problematic than the ones raised by this motion to recuse. Yet they are inherent in the process. The best we can do is to be confident ourselves that the result we reach is consistent with both the fact of fairness and impartiality and the appearance of both.

■ I do not believe a reasonable objective person would conclude that service on the Cultural Development Commission generates an "economic interest" in the outcome of this lawsuit. As the motion notes, "[o]rdinarily, community involvement and political participation are not sufficient to require a Judge or Justice's recusal. *See, e.g., In re Mason*, 916 F.2d 384, 387–88 (7th Cir.1990); *Sexson v. Servaas*, 830 F.Supp. 475, 478 (S.D.Ind.1993)." Specifically, a judge's recusal is not required because the appointing authority is a litigant. *Hamlin v. Gov't of Canal Zone*, 26 F.2d 161 (5th Cir.1928) (judge not disqualified to pass on the removal power of the governor who appointed him). I take it as obvious that I have no personal economic stake in the Commission's activities. I serve without compensation. The motion suggests the City–County Council's review of the budgets of the CIB gives me, as a CDC commissioner, an interest in the outcome of this case because one party may be more inclined to approve funding for the CDC than another. It is by no means clear to me that the political makeup of the City County Council would have any effect on the Commission's funding, half of which comes from private sources. The motion presents no facts to support the claim that council members elected by one party or the other will be more supportive of CIB funding for programs designed to further the cultural resources, tourism, and quality of life in Indianapolis. In my own experience, views on this subject vary widely with individuals. In any event, I consider this claimed conflict of interest to be far too remote to overcome the presumption that a judge will act without regard to it.

The motion also notes that the Mayor, who is a party to this litigation, appointed me to the CDC. To the extent this is a separate or additional factor beyond any claim that the composition of the City–County Council might affect the CDC, I believe it is in the same category as appointment by the Governor and does not require recusal. See generally 10 A.L.R.2d 1307. Similarly, in those states where judges are elected, having accepted political contributions from a party to a lawsuit is not disqualifying. *City of Las Vegas Downtown Redev. Agency v. the Eight Judicial Dist. Court of the State of Nev.*, 116 Nev. 640, 5 P.3d 1059 (2000).

Finally, the motion was filed after oral argument in this case. The movants represent that they were unaware of my appointment to the CDC until that time, and I accept that. But the timing of the motion is not significant here. The timing of the motion in *In re Wilkins*, 780 N.E.2d 842 (Ind.2003), was important because the motion brought to the attention of the affected Justice facts that were not known to him, and was filed only after the Justice had ruled on the case. It is highly desirable that recusal issues be raised promptly, but the motion here presented me with no facts I had not considered before I determined that I should sit on the case. I reached that conclusion before seeing the motion, and nothing in it causes me to reach a different result today.