Richard JANDURA, Appellant–Plaintiff,

v.

TOWN OF SCHERERVILLE, Appellee–Defendant.

No. 45A04–1005–PL–308.

Court of Appeals of Indiana.

Sept. 24, 2010.

Publication Ordered Oct. 29, 2010.

Stephen Bower, Thiros and Stracci, Merrillville, IN, for appellant.

David M. Austgen, Timothy R. Kuiper, Michael J. Jasaitis, Austgen Kuiper & Associates, P.C., Crown Point, IN, for appellee.

## OPINION

BARNES, Judge.

### Case Summary

Richard Jandura appeals the trial court's entry of judgment against him and in favor of the Town of Schererville ("the Town"). We affirm.

### Issues

Jandura raises several issues, which we combine and restate as whether discipline imposed against him by the Town's Board of Police Commissioners ("the Board") was improperly politically motivated.

### Facts

Jandura is an officer with the Schererville Police Department ("the Department"). On March 1, 2007, Jandura was off-duty but driving a take-home Department police car to the station when a call went out over the emergency radio regarding a non-breathing child. Rules and regulations of the Department require anyone driving a take-home car to radio in after receiving an emergency report, even when off-duty, and to report to the emergency if nearby. Jandura did not radio in, even though he was very close to the child's residence. Instead, he drove past the residence and, in fact, passed two other Department officers who were heading in the opposite direction to the scene. When Jandura arrived at the station, he told another officer that he had "kept right on going" by the scene and accompanied that statement with a motion imitating a first-down call by a football referee. Appellee's App. p. 3. The child subsequently died.[1]

On June 5, 2007, David Dowling, the Department Chief of Police, filed formal disciplinary charges against Jandura with the Board. The charges alleged that Jandura had neglected his duties and that he had engaged in conduct unbecoming an

---

1. There is no evidence Jandura's actions contributed to the death.

officer. On June 19, 2007, Jandura moved to disqualify three of the Board members from hearing the disciplinary action. The reason for this request was that Jandura, as president of the political action committee ("PAC") for the Schererville Fraternal Order of Police ("FOP"), had decided to support the primary campaign of Tony Myszak for a seat on the Town Council. This support included delivering a check to a local newspaper to run a full-page ad for Myszak. Myszak's opponent was incumbent Rob Guetzloff. Three members of the Board had made monetary contributions to Guetzloff's campaign, as had the Board's attorney. ·Chief Dowling also financially supported Guetzloff, who ended up winning the primary against Myszak.[2] Jandura contended that the Board members who had contributed to Guetzloff's campaign could not be neutral and unbiased because of his support for Myszak. None of the Board members disqualified themselves from considering Jandura's case.

On August 14, 2007, the Board found that Jandura had neglected his duties by failing to respond to the emergency call, but that he had not engaged in conduct unbecoming an officer. Although Chief Dowling had recommended Jandura's outright termination, the Board instead decided to suspend Jandura from duty without pay for ninety days. All five members of the Board voted to impose this discipline.

On September 5, 2007, Jandura filed a four-count complaint with the trial court. The first count alleged that Jandura's discipline was prompted by political motives, in violation of Indiana law; the second count sought judicial review of the Board's decision and alleged that the Board's disciplinary action was arbitrary and capricious; the third count alleged that Jandura's First Amendment rights had been violated by the discipline; the fourth count alleged that Chief Dowling had publicly defamed him. On November 16, 2009, the trial court entered an order seeming to resolve counts one and two of the complaint, effectively denying Jandura's petition for judicial review and affirming the discipline.[3] The Town subsequently moved for summary judgment on the remaining counts of the complaint. On April 22, 2010, the trial court granted summary judgment in the Town's favor on those counts. Jandura now appeals.

## Analysis

The standard of review to apply in this case is somewhat complicated by the nature of the complaint Jandura filed. As noted, Jandura filed a four-count complaint. The first two counts, alleging a "political firing" and an arbitrary and capricious disciplinary decision, cited as their basis the judicial review procedures of Indiana Code Section 36–8–3–4. The third and fourth counts alleged First Amendment violations and defamation. As noted, the trial court apparently resolved the first two counts of the complaint on November 16, 2009, and resolved the other two counts via summary judgment on April 22, 2010. On appeal, Jandura appears to have abandoned any First Amendment and/or defamation claims, as he develops no cogent argument regarding them. Given the arguments Jandura has raised, we will treat this appeal solely as one arising out of the denial of Jandura's petition for judicial review under counts one and two of the complaint and will not address the trial court's grant of summary judgment as to the other two counts.

---

**2.** The primary election was held after March 1, 2007, and before June 5, 2007.

**3.** This order did not specify which counts of the complaint it was addressing.

■ The Town implies that Jandura's appeal as to the trial court's resolution of counts one and two of the complaint is untimely because he did not file a notice of appeal within thirty days of the November 16, 2009 order. We observe, however, that that order was not a final appealable judgment because it did not resolve the other two counts of the complaint. Indiana Trial Rule 54(B) states in part:

> A judgment as to one or more but fewer than all of the claims or parties is final when the court in writing expressly determines that there is no just reason for delay, and in writing expressly directs entry of judgment, and an appeal may be taken upon this or other issues resolved by the judgment; but in other cases a judgment, decision or order as to less than all the claims and parties is not final.

The November 16, 2009 order did not contain the "magic language" that would have converted it into a final, appealable order. Jandura's notice of appeal filed within thirty days of the April 22, 2010 grant of summary judgment, which finally disposed of the case in its entirety, was timely and sufficient to bring a challenge to the November 16, 2009 order as well. *See Georgos v. Jackson,* 790 N.E.2d 448, 452 (Ind. 2003) (holding that an order disposing of less than an entire case is not final unless it contains the "magic language" of Trial Rule 54(B), and that a party may wait until final judgment to challenge any order entered during the litigation, even if it could have been challenged in an interlocutory appeal).

Turning to the merits of the appeal, Indiana Code Section 36–8–3–4 provides the mechanism for the discipline of police officers by a municipal safety board or board of police commissioners. The statute states in part:

Except as provided in subsection (m), a member of the police or fire department holds office or grade until the member is dismissed or demoted by the safety board. Except as provided in subsection (n), a member may be disciplined by demotion, dismissal, reprimand, forfeiture, or suspension upon either:
(1) conviction in any court of any crime; or
(2) a finding and decision of the safety board that the member has been or is guilty of any one (1) or more of the following:
> (A) Neglect of duty.
> (B) A violation of rules.
> (C) Neglect or disobedience of orders.
> (D) Incapacity.
> (E) Absence without leave.
> (F) Immoral conduct.
> (G) Conduct injurious to the public peace or welfare.
> (H) Conduct unbecoming an officer.
> (I) Another breach of discipline.

The safety board may not consider the political affiliation of the member in making a decision under this section. If a member is suspended or placed on administrative leave under this subsection, the member is entitled to the member's allowances for insurance benefits to which the member was entitled before being suspended or placed on administrative leave. In addition, the local unit may provide the member's allowances for any other fringe benefits to which the member was entitled before being suspended or placed on administrative leave.

Ind.Code § 36–8–3–4(b). Judicial appeals of a safety board's disciplinary action may be brought pursuant to subsections (e) through (*l*) of the statute.

■ Judicial review of an administrative disciplinary action under Section 36–

8–3–4 is limited to determining whether the board of police commissioners possessed jurisdiction of the subject matter, and whether the board's decision was made pursuant to proper procedures, was based upon substantial evidence, was arbitrary or capricious, and was in violation of any constitutional, statutory, or legal principle. *Rynerson v. City of Franklin,* 669 N.E.2d 964, 971 (Ind.1996). A court reviewing a police officer disciplinary action may not judge witness credibility or weigh conflicting evidence in determining whether there was substantial evidence to support the action. *Id.* Courts must review the record as a whole to determine whether the administrative finding that an officer neglected his or her duties is supported by substantial evidence. *Id.*

■ In his opening brief, Jandura completely fails to acknowledge that, during his disciplinary hearing before the Board, he admitted violating rules and regulations of the Department when he did not respond to the emergency call while driving a take-home car. Jandura further admitted that this neglect of his duties warranted some kind of discipline short of his termination.[4] In fact, the Board ended up rejecting Chief Dowling's recommendation that Jandura be terminated and instead imposed a ninety-day suspension. To the extent Jandura seems to now be arguing that he should not have been disciplined at all, he has waived that argument because he did not make such an argument before the Board. *See Burke v. City of Anderson,* 612 N.E.2d 559, 564 (Ind.Ct. App.1993), *trans. denied.*

■ We will assume for the sake of argument that Jandura is contending that the severity of his discipline, apart from the fact of the discipline itself, was improperly motivated by political considerations. First, we address Jandura's claim that he was denied a fair hearing before an impartial body because three of the Board commissioners supported Guetzloff's Town Council campaign and Jandura supported Guetzloff's primary opponent, Myszak. Police merit board hearings are administrative actions that, although less formal than civil proceedings, as a matter of due process require a full and fair hearing conducted in good faith before an impartial body. *Fornelli v. City of Knox,* 902 N.E.2d 889, 894 (Ind.Ct.App.2009) (quoting *Sullivan v. City of Evansville,* 728 N.E.2d 182, 193 (Ind.Ct.App.2000)), *trans. denied.* With respect to administrative boards or panels generally, because they often are composed of persons without legal training, "courts are reluctant to impose strict technical requirements upon their procedure." *In re Change to Established Water Level of Lake of Woods in Marshall County,* 822 N.E.2d 1032, 1041 (Ind.Ct.App. 2005), *trans. denied.* "Indeed, in the absence of a demonstration of actual bias, we will not interfere with the administrative process. Instead, we presume that an administrative board or panel will act properly and without bias or prejudice." *Id.* (citation omitted).

■ Jandura devotes much attention to the alleged political motivations of Chief Dowling and other "higher-ups" at the Department. Such motivations are, we believe, irrelevant here. Although Chief Dowling initiated the disciplinary action, it was the Board commissioners who ultimately decided whether and how severely to discipline Jandura. Even if Chief Dowl-

---

4. We remind counsel for Jandura that Indiana Appellate Rule 46(A)(6)(b) requires that facts in a brief be stated in accordance with the applicable standard of review, which here requires deference to the Board's ruling. Jandura's failure to mention his admissions in his brief arguably violates this rule.

ing was motivated by political considerations to file the disciplinary charge against Jandura, he was not the ultimate decisionmaker; the Board commissioners were. Indeed, we assume that one of the primary statutory purposes for the independent Board's very existence is to remove the discipline of police officers from the "politics" of the stationhouse.

■■■ We conclude Jandura's claims that the Board could not be impartial are too attenuated to establish actual bias against Jandura. To reiterate, the FOP PAC, of which Jandura was president, decided to support a candidate for Town Council in a primary election, This candidate was running against an incumbent who had received financial contributions from three of the Board commissioners and the Board's attorney. Jandura also argues that, because the commissioners are appointed and subject to removal by the Town Council,[5] they had an interest in appeasing Guetzloff by punishing Jandura for his support of Myszak in order to ensure they would not be removed from the Board.

■■■■ For guidance on this point, we look to some cases addressing the political activities of a judge and whether recusal of the judge is necessary, while keeping in mind that judges are held to a higher standard when it comes to conflicts of interest than are members of an administrative body. In *Peterson v. Borst*, 784 N.E.2d 934 (Ind.2003), Justice Boehm refused to recuse himself from participating in a case involving former Indianapolis Mayor Bart Peterson, who had appointed Justice Boehm to Indianapolis's Cultural Development Commission. Justice Boehm noted that an appointed judge or justice is not required to recuse himself or herself

from a case where the appointing authority is a party. *Peterson,* 784 N.E.2d at 937. Nor is a judge or justice categorically barred from political participation. *Id.* Moreover, in the case of judicial elections, having accepted political contributions from a party to a lawsuit is not automatically disqualifying. *Id.* (quoting *City of Las Vegas Downtown Redev. Agency v. The Eight Judicial Dist. Court of the State of Nev.,* 116 Nev. 640, 5 P.3d 1059 (Nev. 2000)). The United States Supreme Court has held, as a matter of due process, that a judge is required to recuse from a case when he or she has substantial pecuniary or personal interests in the outcome of litigation, but not when those interests are remote and insubstantial. *See Caperton v. A.T. Massey Coal Co., Inc.,* —— U.S. ——, 129 S.Ct. 2252, 2263, 173 L.Ed.2d 1208 (2009) (holding that facts of that case warranted an "exceptional" finding that West Virginia Supreme Court of Appeals justice should have recused himself from considering case involving a $50 million judgment against a party that had contributed $3 million to his election campaign).

We conclude the interests of the three challenged commissioners in the outcome of Jandura's disciplinary proceeding were too remote and insubstantial to necessitate their removal. If not even an elected judge is required to step aside in typical cases involving a direct campaign support-. er,[6] we fail to perceive why a member of an administrative body should be required to step aside in a case involving someone who had supported another candidate for an office whom the member had opposed. The potential for actual bias, while perhaps not completely non-existent, is simply too remote. We also take judicial notice of the

---

5. *See* I.C. § 36–8–9–3.1.

6. The *Massey* opinion clearly indicates that it was decided on the basis of the "extreme"

and "extraordinary" facts of the case. *Massey,* —— U.S. at ——, 129 S.Ct. at 2265.

fact that the Town Council has five members. Even if Guetzloff as a member of the Town Council had wanted to remove some or all of the Board commissioners if they had decided not to punish Jandura in any way, he would have had to obtain the consent of at least two other Town Council members to do so.

Jandura raises as a separate issue that the Board improperly considered his political views when it deliberated his disciplinary action. Indiana Code Section 36–8–3–4(b) prohibited the Board from considering Jandura's "political affiliation" in making its decision. Jandura asserts that we ought to treat a claim of a "political firing" of a police officer similar to claims of employment discrimination.[7] The law of employment discrimination is based primarily upon specifically-worded federal statutes and complex case law interpreting those statutes. *See Filter Specialists, Inc. v. Brooks,* 906 N.E.2d 835, 838–42 (Ind.2009). It is clear that we ought not incorporate that law into this arena.[8]

The only reported case that has addressed Indiana's statutory bar on considering a police officer's or firefighter's "political affiliation" in a disciplinary action stated simply that the disciplined party had the burden of proving that the discipline occurred for political reasons. *See City of Evansville v. Conley,* 661 N.E.2d 570, 574 (Ind.Ct.App.1996), *trans. denied.* In *Conley,* we found sufficient evidence that Democrats in the Evansville Fire Department had exerted pressure upon fifty-five firefighters, primarily Republicans, to accept demotions. Among other evidence, there was direct testimony by the fire chief that the department's ranking system was based on politics, not merit. *Id.* at 576. There simply is no such direct evidence here with respect to the Board's consideration of Jandura's disciplinary action.

Again, it appears to us that Jandura's complaint of improper political motivations boils down solely to the fact that he supported a Town Council primary election candidate who was running against an incumbent supported by three members of the Board. That is no more evidence of discriminatory intent than an employee of one race being fired by a supervisor of a different race. That fact alone surely does not establish a case of discrimination.

In addition, in the present case, the vote to punish Jandura with a ninety-day suspension was unanimous, with the two Board commissioners who had not directly supported Guetzloff joining the three who had. The Board also voted to impose discipline that was less severe than the termination sought by Chief Dowling. Furthermore, there is no question that Jandura violated Department rules and regulations, as he frankly admitted at the disciplinary hearing. Several other officers in the Department also indicated that under the facts and circumstances of the case, given how close Jandura was to the scene of the non-breathing child, he should have radioed in and stopped there. One of those officers, who was in the stationhouse when Jandura arrived there, noted Jandura's "off-color" account of driving by the scene and making a first-down gesture. Appellee's App. p. 3. Certainly, it was within the Board's discretion to decide that Jandura's failure to follow Department rules and regulations in the face of an emergency situation—specifically to ignore his obli-

---

**7.** It bears emphasizing that, although Jandura has repeatedly referred during this litigation to a firing or termination, he was not fired, but instead was suspended for ninety days.

**8.** For similar reasons, we find it unnecessary here to address cases of retaliation for filing worker's compensation claims.

gation under the circumstances to radio in and report to that emergency—warranted significant punishment, even if Jandura's conduct did not contribute to the child's ultimate death. There is no indication anywhere in the record that Jandura's political beliefs had any influence on the Board's decision.

## Conclusion

Jandura has failed to establish that any of the Board commissioners should have disqualified themselves from ruling in his disciplinary proceeding or that political considerations played any part in his discipline. We affirm the trial court's ruling.

Affirmed.

FRIEDLANDER, J., and CRONE, J., concur.

## *ORDER*

Appellee, by counsel, has filed a Motion for Publication of Opinion.

Having considered the matter, the Court FINDS AND ORDERS AS FOLLOWS:

1. Appellee's Motion for Publication of Opinion is GRANTED, and this Court's opinion handed down on September 24, 2010, marked Memorandum Decision, Not for Publication, is now ORDERED PUBLISHED.

· FRIEDLANDER, BARNES, CRONE, JJ., concur.