

FILED

May 28 2019, 5:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Rinzer Williams, III | Rodney Pol, Jr. |
| Gary, Indiana | Assistant City Attorney |
| | Gary, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Gary Police Civil Service Commission, | May 28, 2019 |
| *Appellant-Respondent,* | Court of Appeals Case No. 18A-MI-540 |
| v. | Appeal from the Lake Circuit Court |
| | The Honorable Marissa McDermott, Judge |
| City of Gary, | The Honorable Alice A. Kuzemka, Temporary Judge |
| *Appellee-Petitioner.* | Trial Court Cause No. 45C01-1707-MI-221 |

**Shepard, Senior Judge.**

[1] Police officers were following the trail of a suspect in the aftermath of a double homicide, and a K-9 unit led them to the home of a reserve police officer. He refused to open his door and later failed to cooperate with an internal affairs investigation. Was the police force justified in terminating his reserve status? The Gary Police Civil Service Commission said no and ordered the City of

Gary to reinstate Reserve Officer Lamarquist Pritchett. The trial court reversed the Commission. We affirm the trial court's judgment.

## Issues

The Commission raises two issues:

I.   Whether the trial court committed reversible error in declining to defer to the Commission's findings; and

II.  Whether the trial court erred in reversing the Commission's decision that Pritchett should be reinstated.

## Facts and Procedural History

Pritchett was a reserve police officer with the Gary Police Department (GPD) and lived in Gary. He had been a reserve officer for six years. On the night of October 21, 2016, a double homicide occurred. Several GPD officers used a K-9 unit to follow a scent trail from the scene. As the officers walked with the K-9, they saw a man, later identified as Pritchett, wearing a police uniform while standing in the doorway of a house. As the officers approached, Pritchett retreated inside the house and shut the door.

The K-9 followed the scent to the house and alerted at the front door. The officers knocked on the door for five minutes, but no one answered. They next went to a neighboring house, where the K-9 also alerted. The resident of that house allowed the officers to enter and search, but they did not find any suspects.

[5] The officers returned to Pritchett's house, where they received orders to wait for a homicide detective. As they waited, they saw lights being turned on and off inside the residence. The detectives arrived and knocked on the door, but Pritchett did not respond.

[6] One of the detectives contacted Pritchett by telephone the next day. Pritchett admitted he had been at home the previous evening and had not answered the door for the officers. When asked why he had failed to respond, Pritchett explained he was behind on child support and thought that the officers were there to serve a child support warrant on him. He also said he had been arguing with his girlfriend, and he "wasn't in the right state of mind to come to the door." Appellee's App. Vol. II, p. 19.

[7] Sergeant Justin Illyes of the GPD's internal affairs division was assigned to investigate Pritchett's failure to cooperate with the officers. The sergeant and Pritchett spoke by telephone and scheduled an in-person meeting for the morning of November 7, 2016. During a telephone call before the meeting, Pritchett indicated that his attorney had told him not to speak with anyone about the matter. Sergeant Illyes advised Pritchett that Pritchett was required by GPD rules and regulations to speak with him, and failure to comply could result in disciplinary action. Pritchett indicated he would be present.

[8] Pritchett did not appear for the November 7 meeting at the scheduled time. Later, Pritchett and his attorney called Sergeant Illyes to reschedule the meeting for a time when his attorney could be present. Sergeant Illyes indicated that

attorneys "are not involved" in internal affairs investigations. *Id.* at 23. Pritchett indicated he would call him back.

[9] During another phone call on November 7, Pritchett agreed he would meet with Sergeant Illyes at one o'clock that day. Pritchett appeared at the GPD with his father, but Sergeant Illyes was on a conference call. The sergeant stepped outside to ask Pritchett's father to wait for him, but Pritchett and his father left after a half-hour. Pritchett later called Sergeant Illyes to say that he had left to go pick up his kids from school. He had appeared at GPD so he "wouldn't be insubordinate" for failing to appear. *Id.* at 25. Sergeant Illyes told Pritchett to appear on Wednesday, November 9, at ten o'clock and further that failure to appear would constitute insubordination.

[10] On November 9, 2016, Pritchett arrived at the GPD internal affairs office, signed in, and promptly left. Due to Pritchett's failure to appear for interviews, neither Sergeant Illyes nor any other internal affairs officers were able to speak with Pritchett about his acts on the night of the homicides.

[11] On November 14, 2016, the GPD sent Pritchett a letter entitled "Suspension of Police Powers." Appellant's App. Vol. 2, p. 81. In the letter, Chief Larry McKinley notified Pritchett, "all authority extended to you from the Gary Police Department is suspended. You are hereby commanded to cease identifying yourself as a Reserve Officer with the Gary Police Department." *Id.* The letter further stated, "This suspension will be in effect pending the outcome of your investigation." *Id.*

[12]   On December 20, 2016, the City filed a verified complaint with the Commission, asking the Commission to terminate Pritchett's appointment as a reserve officer. During a January 5, 2017 meeting, the Commission determined that it would decide the case rather than assign it to a hearing officer.

[13]   The Commission held a hearing on March 9, 2017, during which the Commission explained that it had recently amended the rules governing reserve police officers and that some of the rules cited in the City's complaint were now inapplicable to reserve officers. The City requested leave to amend its complaint, and the Commission granted the request.

[14]   During the same meeting, the Commission held an executive session. After the session, the Commission unanimously determined, "Pritchett had indeed been prejudiced by the fact that it has been over ninety (90) days in which his powers have been suspended and it is the decision of the Commission to reinstate reserve officer Pritchett's reserve officer power [sic] immediately, pending the outcome of the hearing." *Id.* at 137.

[15]   On March 20, 2017, the City filed an amended complaint with the Commission. The City alleged that Pritchett had violated Commission rules, neglected or disobeyed orders, engaged in immoral conduct, engaged in conduct injurious to the public peace or welfare, and engaged in conduct unbecoming a police officer. The City reaffirmed its request that the Commission terminate Pritchett's appointment as a reserve officer.

[16]     The Commission held evidentiary hearings on April 6, May 4, and May 24, 2017. The City presented evidence describing the events set forth above. Pritchett did not present any evidence.

[17]     On June 1, 2017, the Commission held a hearing to announce its decision. The Commission's attorney recommended that it determine the City "has failed to submit a prima facie case which would substantiate that Officer Pritchett violated the rules as set out in the code of conduct for Reserve Officers" and allow Pritchett to continue serving as a reinstated officer. *Id.* at 147. The Commission unanimously accepted the recommendation. The City filed a Notice of Appeal, which the Commission rejected.

[18]     On July 20, 2017, the City filed a verified complaint for judicial review. The court held oral argument, and the parties submitted proposed findings of fact and conclusions thereon. The court reversed the Commission's decision and remanded for further proceedings.

[19]     The court determined the Commission had erred by failing to issue findings and conclusions. In the absence of findings and conclusions, the court declined to afford any deference to the Commission's decision. In addition, the court stated, "it appears that even if proper findings had been entered, a review of the facts in [the] record would not support the Commission's determination." *Id.* at 187. The court further concluded the Commission's decision was "arbitrary, capricious, and unsupported by substantial evidence," and remanded the matter

to the Commission to issue findings and conclusions "not inconsistent" with the court's decision. *Id.* This appeal followed.

# Discussion and Decision

## A. Standard of Review

[20] In general, the discipline of police officers is within the province of the government's executive, rather than judicial, branch. *Sullivan v. City of Evansville*, 728 N.E.2d 182 (Ind. Ct. App. 2000). A reviewing court may not substitute its judgment for that of the administrative body. *City of Indianapolis v. Woods*, 703 N.E.2d 1087 (Ind. Ct. App. 1998), *trans. denied*.

[21] As a result, when reviewing a police officer disciplinary action, a court is limited to determining whether the board of police commissioners possessed jurisdiction over the subject matter and whether the board's decision was made pursuant to proper procedures, was based upon substantial evidence, was arbitrary or capricious, and was in violation of any constitutional, statutory, or legal principle. *Jandura v. Town of Schererville*, 937 N.E.2d 814 (Ind. Ct. App. 2010), *trans. denied*; *see also* Gary Ordinance section 2-1084 (December 21, 1982) (setting forth standards of review for court appeals of Commission decisions). An arbitrary and capricious decision is one which is willful and unreasonable, made without any consideration of the facts and in total disregard of the circumstances, and lacks any basis which might lead a reasonable and honest person to the same decision. *Davidson v. City of Elkhart*, 696 N.E.2d 58 (Ind. Ct.

App. 1998), *trans. denied*. A party challenging an administrative decision bears the burden of proving it arbitrary and capricious. *Id.*

## B. Findings, Conclusions, and Deference

[22] The Commission argues the trial court erred in: (1) determining the Commission was required to issue findings of fact and conclusions, and (2) declining to defer to the Commission's authority in the absence of same.

[23] Regardless of whether the Commission was required to issue findings and conclusions under the circumstances of this case, it is well established that courts do not weigh conflicting evidence and defer to boards of police commissioners on questions of witness credibility. *Jandura*, 937 N.E.2d at 818-19. Further, we are not bound by an administrative agency's conclusions of law, but "'[a]n interpretation of a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless this interpretation would be inconsistent with the statute itself.'" *Chrysler Group, LLC v. Rev. Bd. of Ind. Dept. of Workforce Dev.*, 960 N.E.2d 118, 123 (Ind. 2012) (quoting *LTV Steel Co. v. Griffin*, 730 N.E.2d 1251, 1257 (Ind. 2000)).

[24] Nevertheless, in this case the Commission did not identify any credibility determinations, nor did it explain how it interpreted the governing ordinances and codes of conduct. Instead, the Commission simply adopted its attorney's recommendation that the City had failed to establish a prima facie case of misconduct. *Cf. Jandura*, 937 N.E.2d at 817 (disciplinary board addressed claims of police misconduct point-by-point and explicitly imposed a lesser

sanction than was requested by chief of police). The trial court was required to avoid reweighing the facts, but there is no indication that the court failed to comply with that rule. As we discuss in more detail below, Pritchett's repeated and blatant noncompliance with GPD rules governing reserve officers was clearly established by uncontradicted evidence. The trial court did not err on the question of deference to the administrative agency.

## C. Prima Facie Case

[25] The Commission claims the trial court erred in concluding that its decision was arbitrary and capricious, as well as unsupported by the evidence. The City's Rules and Regulations Governing Gary Police Reserve Officers provide that the Commission "has jurisdiction over the selection for appointment of, and disciplining and/or removal of, such Reserve Officer [sic] for the City of Gary." Appellant's App. Vol. 2, p. 50. The chief of the GPD may suspend a reserve officer's police powers "if the offense is deemed to be egregious, pending Commission review at the next regular scheduled meeting." *Id.* at 57. A reserve officer may not be dismissed unless the Commission finds proof of misconduct "by a preponderance of the evidence." *Id.* at 55. Allegations of misconduct may include, in relevant part:

    a.    Neglect of Duty

    b.    Violation of Commission Rules

    c.    Neglect or Disobedience of Orders

    d.    Continuing Incapacity

e.      Absence without Leave

f.      Immoral Conduct

g.      Conduct Injurious to the Public Peace or Welfare

h.      Conduct Unbecoming a Police Officer

*Id.* at 56.

[26]     Like the trial court, we are obligated to view the evidence in the light most favorable to the Commission's decision, but based upon the evidence presented it is difficult to understand how the Commission could have concluded that the City had failed to present a prima facie case that Pritchett had violated the reserve officers' code of conduct. Pritchett admitted to a detective that he had failed to answer his door on the night of October 21, 2016, even though he knew other officers were outside. He offered unconvincing excuses, such as that he feared the officers had arrived (in the middle of the night, with a K-9 unit) to serve a warrant for unpaid child support. Pritchett's refusal to cooperate delayed two officers and a homicide detective from pursuing other avenues of investigation for a double homicide case.

[27]     Further, after the GPD's internal affairs division opened an investigation, Pritchett continued to fail to cooperate. Sergeant Illyes repeatedly ordered Pritchett to appear for an interview, but Pritchett took steps to avoid questioning. He first failed to appear at an agreed-upon time. Next, he appeared but left the internal affairs division's offices after waiting for thirty minutes. Finally, on a third occasion, he arrived, signed in, and promptly left

without talking with Sergeant Illyes. Pritchett admitted to the sergeant that his primary goal was to avoid appearing to "be insubordinate" for failing to attend questioning. Appellee's App. Vol. II, p. 25. At a minimum, this undisputed evidence, much of which resulted from Pritchett's own statements to his fellow officers, demonstrates neglect or disobedience of orders, conduct injurious to the public peace or welfare, and conduct unbecoming a police officer, as alleged by the City in its Amended Verified Complaint.

[28] The Commission argues that it did not necessarily determine that Pritchett was innocent of any rule violations. Instead, the Commission claims that its order to reinstate Pritchett could be seen as an acknowledgement that Pritchett had committed rule violations but that he had been "punished enough" by his suspension. Appellant's Br. p. 15. This argument is undercut by the Committee's unanimous, unequivocal adoption of its attorney's recommendation that the Committee should conclude the City had "failed to submit a prima facie case which would substantiate that Officer Pritchett violated the rules." Appellant's App. Vol. 2, p. 147.[1] The trial court did not err in concluding the Commission's ruling was arbitrary and capricious because it was issued in disregard of the undisputed facts and circumstances. *See Jandura*,

---

[1] The Commission further claims the City erroneously relied in part on rules and ordinances that are inapplicable to reserve police officers. We need not address this issue because the City plainly claimed that Pritchett violated rules governing reserve police officers and submitted ample evidence in support of that claim.

937 N.E.2d at 819 (affirming disciplinary case involving police officer; officer did not dispute rule violations during administrative proceedings).

# Conclusion

[29] For the reasons stated above, we affirm the judgment of the trial court.

[30] Affirmed.

Kirsch, J., and Tavitas, J., concur.