STATE BOARD OF TAX COMMISSIONERS of the State of Indiana, Appellant-Defendant,

v.

ALUMINUM COMPANY OF AMERICA, Appellee-Plaintiff.

No. 1–279A54.

Court of Appeals of Indiana, Fourth District.

April 21, 1980.

Rehearing Denied May 19, 1980.

Theodore L. Sendak, Atty. Gen., Marilyn S. Meighen, Deputy Atty. Gen., Indianapolis, for appellant-defendant.

Leonard J. Betley, Ralph A. Cohen and Barton T. Sprunger, Ice, Miller, Donadio & Ryan, Indianapolis, for appellee-plaintiff.

CHIPMAN, Judge.

The State Board of Tax Commissioners (Board) appeals from a decision of the Union Circuit Court, which held the Board acted unlawfully in determining the business personal property tax liability of the appellee, Aluminum Company of America (Alcoa), for the years 1974, 1975 and 1976.

Affirmed.

## INTRODUCTION

Alcoa is a worldwide company engaged in the production of aluminum and aluminum products. Alcoa's business operations are completely integrated, and include all major processes involved in the production of aluminum, including: mining bauxite, refining bauxite into alumina (aluminum oxide), electrolytically reducing the alumina to molten aluminum through a smelting process, alloying molten aluminum with various materials and casting the molten alloy into ingot form, and fabricating a wide variety of products from ingots. At all relevant times Alcoa has had three major facilities in Indiana engaged in one or more of the processes involved in the production of aluminum and aluminum products. These facilities, located in Warrick, Wayne and Tippecanoe Counties, are not separately incorporated.

Alcoa's Warrick operations is engaged in smelting, alloying ingot casting and fabricating processes. The Warrick plant receives alumina for its smelting operations primarily from Alcoa facilities in Alabama and Texas. Since the fabricating capacity of the Warrick plant is greater than its smelting (ingot producing) capacity, the Warrick operation regularly receives a substantial amount of ingot for use in its fabricating processes from other Alcoa works located in the United States.

Alcoa's Richmond Works, located in Wayne County, is engaged in the production of aluminum closures, primarily twist off bottle caps for the soft drink industry. The Richmond plant has no smelting or ingot producing capabilities, and therefore receives coils of sheet aluminum from other Alcoa facilities, including its Warrick operations.

Alcoa's Lafayette Works, located in Tippecanoe County, is engaged in the production of extruded shapes and aluminum tubes. Because the Lafayette facility has no smelting capabilities, it too receives ingots, known as "pigs," from other Alcoa facilities and from other suppliers.

■ The State Board of Tax Commissioners has the duty and authority to re-

view the assessment or reassessment of tangible personal property held by Indiana businesses as of March 1 of each year. By filing complaints in the Warrick, Tippecanoe, and Wayne County Circuit Courts, Alcoa challenged the final business personal property assessments issued by the Board for Alcoa for the years 1974, 1975 and 1976. Subsequently these lawsuits were venued to the Union Circuit Court and consolidated for trial. At trial, Alcoa complained the final 1974, 1975 and 1976 personal property assessments issued by the Board for Alcoa were contrary to and in violation of the Board's Regulation 16 which prescribes an alternative method of valuing inventory. Alcoa also complained of the method by which the Board increased Alcoa's assessment for 1974, claiming the Board failed to give notice to Alcoa or hold a hearing on the review of the assessment as required by Ind.Code 6–1.1–14–11, and failed to give Alcoa notice of its final assessment determination within the time required by Ind.Code 6–1.1–16–1.

The trial court found in favor of Alcoa on all issues, issued extensive findings of fact and conclusions of law, and entered judgment accordingly.[1] On appeal, the Board presents no challenge to the trial court's findings of fact, which we therefore treat as binding upon this court. Only the following questions of law are presented for our review:

1) whether the trial court correctly concluded the Board arbitrarily and capriciously refused to follow its own regulation in denying Alcoa the right to exclude certain overhead costs in valuing inventory for Indiana business personal property tax purposes, and

2) whether the trial court properly found the State Board failed to timely make its final assessment determination of the business personal property tax liability of Alcoa for the year 1974.

We affirm.

## I. Inventory Valuation—Regulation 16

■ Our first issue concerns the application of the State Board's Regulation 16, specifically section 3.2,[2] which prescribes the methods by which a taxpayer may value inventory for business personal property tax purposes. Section 3.1 generally defines and classifies inventory as property of the taxpayer 1) held for sale in the ordinary course of business (finished goods), 2) currently in the process of production for subsequent sale (work-in-process), or 3) property which is ultimately to be consumed in the production of goods or services to be available for sale (raw materials and supplies).[3]

Section 3.2 of Regulation 16 provides for two methods of inventory valuation. The regular method uses the cost of the inventory as rendered on the regular books and

---

1. The trial court vacated Alcoa's 1975 and 1976 final assessment determinations issued by the Board and remanded the matter for further proceedings. The lower court declared the 1974 property assessment submitted by Alcoa to be final.

2. Ind.Admin.Rules & Regs. (6–1.1–3–9)–31 (Burns Code Ed.)

3. Section 3.1A of Regulation 16 provides the complete inventory definition:

   Definition of inventory: As used in this regulation the term 'inventory' is defined as the aggregate of those items of tangible personal property . . . which are held for sale in the ordinary course of business, are currently in the process of production for subsequent sale, are ultimately to be consumed in the

production of the goods or services to be available for sale or are utilized in marketing or distribution activities. The term 'inventory' embraces the following:

(1) *Goods Awaiting Sale.* Goods or commodities awaiting sale which include, but are not limited to: the finished goods of a manufacturer; . . . and by-products of a manufacturer.

(2) *Work in Process.* Goods or commodities which are in the course of production, i. e., work in process.

(3) *Raw Materials and Supplies.* Goods which will be consumed in either the manufacturing process or in any other manner by the taxpayer, *directly or indirectly.* This category would include, but not be limited to, raw materials, supplies, repair parts, expendable tools and samples.

records of the taxpayer.[4] The taxpayer must also include in his valuation the indirect costs attributable to the production of the personal property item, i. e. the taxpayer's "overhead" or "burden."[5] Therefore, the regular formula devised for valuing inventory under section 3.2 is: cost of material plus overhead or burden equals the value of the inventory.

An alternative method of valuing inventory which was used by Alcoa is outlined in Regulation 16 § 3.2D, which provides:

> D. Alternative Method: As an alternative to any other method(s) described in this regulation, any taxpayer may value finished goods and work in process inventory as follows:
>
> (1) The cost of all direct production labor.
>
> (2) The cost of raw materials must include the total cost incurred to bring the raw materials to the location where they will be utilized in the manufacturing process. This will include, but will not be limited to:
>
> (a) The amounts paid or incurred in obtaining the actual material; i. e., the tangible property.

(b) All freight cost incurred in transporting the materials to the location where the materials will be used in the manufacturing process.

(3) The 35% valuation adjustment will not be allowed for work in process and finished goods inventory.

(4) Any adjustment taken from inventory must be the same basis on which it was included in the tax return.

(5) All raw materials and supplies must be valued as provided for in Section 3.2D(2) and subject to the 35% valuation adjustment, provided that such items have not entered the manufacturing process.

(6) This election, if taken, must be applied to all locations within this state. If this alternative is elected, the taxpayer may not use any other method to value inventory for any subsequent year unless the written request has been approved by the State Board prior to the due date of the return with extensions.

(7) This election is available only for manufacturer's or processor's finished goods or work in process inventories, to

**4.** Section 3.2B(1) defines "cost of inventory":

Cost of Inventory—Cost means, in principle, the sum of the applicable expenditures and charges directly or indirectly incurred in bringing an article to its existing condition and location as of the assessment date. Manufactured or work-in-process inventory of a manufacturer or producer will include all costs paid for materials, labor and all manufacturing costs incurred to bring the inventory to the actual state of completion on the assessment date. Manufacturers and producers who have assumed the role of retailers or wholesalers must value inventories which are kept at retail or wholesale locations including all costs incurred as stated in the first sentence of this subsection.

**5.** "Overhead" or "Burden" is defined in Regulation 16 § 3.2B(3):

(3) Overhead or Burden. Burden or overhead is herein defined as those costs of manufacturing that in an accounting sense are costs that are not directly attributable to the item being produced. These indirect costs consist of, but are not limited to such items as power; heat; light; maintenance; insurance; property taxes on factory buildings

and equipment; factory supervision; material handling, inspection and other indirect labor; depreciation of factory assets; manufacturing employee fringe benefits, vacation, holidays and premium [sic] pay; manufacturing rent expense; amortization of special tools and supplies. Many of these costs are of such nature that the taxpayer in its regular accounting system determines by an estimate the amount of each cost that is used in specific operation and consequently, for accounting purposes, allocates such costs at various stages, processes or upon completion, based upon percentage of a determinable cost. A determinable cost is a cost that in an accounting sense is measured as incurred. Consequently, burden or overhead is comprised of those expense items or costs that, for the accounting purposes of the taxpayer filing the return, are allocated to the product being produced on a percentage or other relationship of some form. If the taxpayer is utilizing the "Direct Cost" method of accounting, burden or overhead would be those manufacturing costs that are expensed directly in the accounting period incurred.

the extent that the goods have not entered another level of trade; i. e., if the manufacturer has assumed the role of a wholesaler or retailer, such goods would not qualify for this election.

Under this alternative valuation method, which may be used only to value the taxpayer's work-in-process and finished-goods inventory, inventory value equals the cost of raw materials plus the direct cost of labor. Consequently, in valuing work-in-process inventory, the alternative method allows the taxpayer to exclude from his valuation the indirect costs, i. e., the manufacturer's overhead, associated with the production of the property in question. This "burden adjustment" lies at the very heart of the dispute between the Board and Alcoa.

The difference between the assessments submitted by Alcoa for its Warrick, Lafayette and Richmond plants for 1974, 1975 and 1976, and the final assessments made by the Board for those years is largely attributable to the Board's disallowance of the burden adjustment taken by Alcoa for burden or overhead incurred at Alcoa plants other than the plants filing the return. Stated simply, the parties disagree as to the correct manner of classifying Alcoa's inventory for business personal property tax assessment.

For instance, Alcoa classified coils of sheet aluminum located at the Richmond plant as work-in-process and assessed the property under the alternative valuation method, thereby excluding from the assessed value overhead costs incurred at other Alcoa plants where the sheet aluminum was produced. Similarly, pig ingots produced at Alcoa plants outside Indiana, but located at Alcoa's Lafayette Works on March 1, were classified as work-in-process and assessed under the alternative valuation method. Consequently, overhead costs incurred at Alcoa plants which produced the ingot were excluded from the assessed value.

However, the Board takes the position that only "on-site" burden may be excluded

in assessing the value of Alcoa's inventory. The Board argues each of Alcoa's plants in Indiana engages in a separate and distinct manufacturing process, and each plant produces an end product. While each end product is considered to be but one link in a chain of the broad overall production of aluminum products, each operation is nevertheless a complete and unique process within in itself. Therefore, argues the Board, coils of sheet aluminum located at Alcoa's Richmond plant, but produced at other Alcoa plants, must be considered raw materials, since the coils have not been "acted upon" by the Richmond plant. Similarly, "pig" ingots located at Alcoa's Lafayette Works, but produced at other Alcoa plants, must be classified as raw materials and therefore may not be assessed under the Regulation 16 alternative valuation. In effect, the Board would treat each Indiana Alcoa plant as an individual operation or taxpayer, classifying inventory as it relates to each facility's production process, not as the property relates to the overall production scheme of Alcoa. After considering the language of Regulation 16 in conjunction with the extensive findings of fact entered by the trial court, we hold the lower court properly found the Board acted in a manner contrary to law when it denied Alcoa the burden adjustments claimed on its 1974, 1975 and 1976 business personal property tax returns.

First, we find nothing in the language of relevant statutes or regulations to support the Board's position that each Alcoa plant must be treated as an individual manufacturing operation or taxpayer for Indiana business personal property tax purposes. Ind.Code 6–1.1–3–7(a) requires that "on or before the filing date of each year a *taxpayer* shall file a personal property return" in each township where his property is subject to assessment. Ind.Code 6–1.1–3–10(a) provides:

> If a *taxpayer* owns, holds, possesses, or controls personal property which is located in two [2] or more townships, he shall file any additional returns with the State

board of tax commissioners which the board may require by regulation. (emphasis added)

Most significantly, the alternative valuation method of Regulation 16 § 3.2D is prefaced by the following language:

[A]ny *taxpayer* may value finished goods and work in process inventory as follows: (emphasis added)

Again, the operative word is *taxpayer*, not *facility*. None of Alcoa's Indiana facilities were separately incorporated during the period in question. There is little doubt in this case that *Alcoa* is the "taxpayer" contemplated by our taxing statutes and regulations. We find no authority for the Board to treat each Alcoa plant as a separate taxpayer in classifying the company's inventory. Instead, we are persuaded by Alcoa's argument that to accept the Board's position would be to construe § 3.2D as meaning:

[A]ny *facility* of a taxpayer may value *inventory which as to such facility are* finished goods and work in process as follows:

We find no basis to support such an interpretation. If we were to adopt the Board's interpretation of Regulation 16 § 3, fungible goods, produced by the same manufacturer and located at the same facility, would be assessed differently. For instance, since the fabricating capacity of Alcoa's Warrick plant is greater than its ingots producing plant, the Warrick operation regularly receives a substantial amount of ingot for use in its fabricating process from other Alcoa plants. These "imported" ingots are identical in size, shape and composition to those produced at the Warrick plant. However, the Board would classify only the ingot produced at the Warrick plant as work-in-process; the ingot produc-

ed at another Alcoa plant would be considered raw material and therefore assessed a different value, even though both ingots were produced by Alcoa, the taxpayer, and located at the same facility on the assessment date. The trial court found that for an integrated corporation such as Alcoa to classify its inventory on a plant by plant basis would create operational chaos. Furthermore, in his June 27, 1978, deposition, Commissioner Durwood S. Stang admitted that general accounting principles and theories are relevant in determining proper inventory classification for business personal property tax assessment. The trial court found that at all relevant times Alcoa has classified sheet aluminum located at the Richmond plant and pig ingot located at the Lafayette plant as work-in-process inventory on its books and records; the court also determined Alcoa's classification of its inventory entirely consistent with generally accepted accounting principles and practices.

Therefore, neither the language of our statutes and regulations nor general accounting theories and practices support the Board's action in disallowing the burden adjustment claimed by Alcoa on its 1974, 1975 and 1976 business personal property tax returns. Accordingly, we hold the trial court properly vacated the Board's final assessment as being contrary to law.

## II. Timeliness of the Board's 1974 Final Assessment

Next we address the question of whether the State Board fully complied with the procedural requirements imposed upon it by Ind.Code 6–1.1–14–11 and Ind.Code 6–1.1–16–1 in issuing a final 1974 personal property assessment for Alcoa.[6] IC 6–1.1–14–11 provides in pertinent part:

The state board of tax commissioners shall give notice by mail to a taxpayer

---

**6.** The difference between the amounts reported by Alcoa for its Warrick, Lafayette and Richmond plants on its business personal property tax returns for 1974, and the final assessment made by the Board for that year, are only in part attributable to the Board's disallowance of the burden adjustment previously discussed. Therefore, it is necessary that we address this second issue concerning the Board's procedure in reassessing Alcoa's property for the 1974 assessment date.

whose assessment is to be reviewed under section 10[6–1.1–14–10] of this chapter. The notice shall state the time, place, and object of a hearing on the assessment. The time fixed for the hearing must be at least ten [10] days after the day the notice is mailed. After the hearing, the state board of tax commissioners shall assess the property in question and mail a certified notice of its final determination to the appropriate county auditor. In addition, the board shall notify the taxpayer by mail of its final determination.

IC 6–1.1–16–1 provides, in part:

[A]n assessing official or board may not change the assessed value claimed by a taxpayer on a personal property return unless the assessing official or Board takes the action and gives the notice required by IC 1971, 6–1.1–3–20 within the following time periods:

\* \* \* \* \* \*

(3) The state board of tax commissioners must make a change in the assessed value, including the final determination on review of an assessment made by a county board of review under IC 1971, 6–1.1–15–2, and give the notice of the change on or before the latter of:

(i) October 1st of the year immediately following the year for which the assessment is made; or

(ii) Sixteen [16] months from the date the personal property return is filed if the return is filed after May 15th of the year for which the assessment is made.

(b) [I]f an assessing official or board fails to change an assessment and give notice of the change within the time prescribed by this section, the assessed value claimed by the taxpayer on the personal property return shall be final.

Alcoa filed its 1974 business tangible personal property returns for Wayne, Tippeca-

noe and Warrick Counties on May 14, 1974, May 15, 1974, and June 14, 1974, respectively. The parties are in agreement that it was incumbent upon the State Board to hold a hearing and thereafter give notice of a final assessment to Alcoa with respect to the returns filed in Wayne and Tippecanoe Counties by October 1, 1975, and with respect to Alcoa's Warrick County return by October 14, 1975.

The trial court found that on January 7, 1975, the State Board gave notice to Alcoa that it would review Alcoa's 1974 property tax returns. Beginning approximately March 26, 1975, one William Lowe, an auditor for the State Board, began his examination of Alcoa's books and records pertinent to the business personal property returns filed by Alcoa for the assessment date of March 1, 1974. This examination was conducted on a day to day basis until September 29, 1975, when Lowe filed his audit recommendation with the Board. Another auditor for the Board, Mr. George Thomas, assisted Lowe for one week in the audit of Alcoa's Warrick Operations. While the State Board refers to Lowe's examination as a series of "continuous hearings," the trial court found the examination of Alcoa's books and records performed by Lowe and Thomas was essentially an audit of Alcoa's records and reporting procedures.

On September 30, 1975, the Board issued its first Final Assessment Determination to Alcoa, advising Alcoa that it had determined the total assessed value of Alcoa's business personal property located in Warrick, Wayne, and Tippecanoe Counties for the March 1, 1974 assessment to be the amounts recommended by Lowe, namely $41,296,700, $2,636,000 and $10,059,520, respectively.[7] The difference between the amounts reported by Alcoa on its 1974 returns and the September 30, 1975, assessment by the Board were in large part attributable to the Board's disallowance of the overhead adjustment taken by Alcoa in valuing its inventory. Alcoa was first noti-

---

7. Alcoa's assessments for the three counties were as follows:

| | |
|---|---|
| Warrick | $40,421,430 |
| Wayne | 2,081,480 |
| Tippecanoe | 8,043,190 |

fied of the Board's position that the adjustment would not be allowed on September 26, 1975, only five days before the Board's September 30th final assessment.

On October 16, 1975, pursuant to Alcoa's request, the Board held a hearing in Indianapolis for purposes of reviewing its September 30th reassessment. For the first time, Alcoa had the opportunity to present objections to the Board's increase in the 1974 assessed value of its business personal property. Following this October 16 hearing, the Board performed supplemental audits of Alcoa and thereafter issued a second 1974 Final Assessment Determination on October 23, 1975.

■ On appeal, the Board argues its final determination in this matter was made on September 30, 1975, when it adopted Lowe's recommendations and issued notice thereof to Alcoa. Alcoa, however, argues the Board's final determination was not made until the Board issued its assessment on October 23, 1975, following the October 16th hearing. The Board maintains that the investigation and audit conducted by Lowe on a day-to-day basis was a "hearing" within the purview of IC 6–1.1–14–11. Alcoa, however, asserts the hearing before the Board on October 16, 1975, was the only hearing conducted. We hold the trial court correctly found the State Board failed to issue a timely final assessment, and therefore, the assessed value claimed by Alcoa on its 1974 personal property return was binding.

■ It is undisputed that Alcoa was entitled to a hearing on the Board's proposed reassessment prior to the Board's final determination. This very issue, i. e., whether the State Board's audit of Alcoa constituted a sufficient hearing, was addressed in *Whirlpool Corp. v. State Board of Tax Commissioners*, (1975) Ind.App., 338 N.E.2d 501. Facing an almost identical fact situation, the First District held:

> While there is no specific statutory definition of a hearing for purposes of assessment or reassessment of business personal property, we do not agree with Board that an investigation, which Board admits was "essentially an audit of Tax-

payer's [Whirlpool's] records and procedures" spanning nearly three months constitutes a hearing.

> ■ Due process requires that a hearing must encompass more than a mere audit or a three month investigation. In *State Board of Tax Commissioners v. Oliverius* (1973), [156] Ind.App. [46], 294 N.E.2d 646, it was recognized that minimal due process in an administrative hearing requires that a party be provided an opportunity to meet and rebut adverse evidence or to cross-examine adverse witnesses. In the case at bar, the record reveals that this opportunity was not accorded Whirlpool, if at all, until November 5, 1970, twenty-one days after the running of the statute of limitations. We therefore hold that Board did not conduct a hearing on the proposed reassessment of Whirlpool's business personal property within the statutory period.

338 N.E.2d at 504, 505. The State Board makes no effort to claim Alcoa ever had an opportunity to object to the basis upon which the Board reassessed the value of Alcoa's 1974 business personal property prior to the October 16, 1975 hearing. Obviously, that hearing occurred after the limitation period had run against the Board. Under the authority of *Whirlpool, supra,* we hold the audit conducted by the Board did not constitute a hearing as contemplated by IC 6–1.1–14–11. Therefore, the Board's final assessment determination could not have been that issued on September 30, 1975. For this reason, the trial court properly concluded the Board failed to comply with the notice, hearing and time requirements of IC 6–1.1–14–11 and 6–1.1–16–1, and appropriately found the property value assessments submitted by Alcoa on its 1974 business personal property returns were final.

The judgment of the trial court is, therefore affirmed in its entirety.

MILLER, P. J., and YOUNG, J., concur.