## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 28 2017, 5:27 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Christopher Cooper
Chicago, Illinois

ATTORNEY FOR APPELLEE

Adam J. Mindel
Hobart, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kirk Homoky,<br>*Appellant-Defendant,*<br><br>v.<br><br>City of Hobart, Indiana,[1]<br>*Appellee-Plaintiff* | July 28, 2017<br><br>Court of Appeals Case No.<br>45A03-1609-MI-2052<br><br>Appeal from the Lake Superior<br>Court<br><br>The Honorable Calvin D.<br>Hawkins, Judge<br><br>Trial Court Cause No.<br>45D02-1603-MI-4 |

**Altice, Judge.**

---

[1] Despite acknowledging that Hobart Police Chief Richard Zormier is not a proper party pursuant to Ind. Code § 36-8-3-4(f), Homoky's counsel has nevertheless persisted in listing Zormier as such in his filings before this court. Because it is undisputed that Zormier is not a proper party, we omit his name from the caption of this case. The City of Hobart (the City) is the sole appellee. *See* Ind. Code § 36-8-3-4(f).

## Case Summary

Kirk Homoky appeals from the trial court's order affirming the decision of the Hobart Board of Public Works and Safety (the Board) to terminate Homoky's employment as an officer of the Hobart Police Department (HPD). Homoky raises numerous issues on appeal, which we consolidate and restate as the following two:

1. Was the Board's decision made pursuant to proper procedure?

2. Were the Board's findings supported by substantial evidence?

We affirm.

## Facts & Procedural History

While working as an HPD officer in 2012, Homoky used the Indiana Data and Communication System (IDACS), a police database which accesses national and statewide criminal history and Bureau of Motor Vehicle information, to run numerous inquiries on his estranged wife, Mattie Homoky n/k/a Robbins (Mattie), and individuals with whom Mattie was associating. Homoky told Mattie on several occasions that he had been running her name as well as the license plates of cars parked in front of her home. Homoky also told Mattie that he had run IDACS inquiries on Phillip Crowder, a man Mattie was dating, and Homoky told her about Crowder's criminal history. Both Mattie and Crowder made complaints about Homoky's behavior to the HPD.

[4] On November 28, 2012, Detective Jeremy Ogden spoke to Dan Barton, the manager of Stardust Bowl II, where Homoky had previously worked a side job as a security officer from 2008 until 2010. Barton told Detective Ogden that in early 2010, Homoky had been inadvertently issued several paychecks to which he was not entitled and that those paychecks had been cashed. Barton stated that he had called Homoky and left a voicemail, but Homoky did not return his call. Another investigator spoke to Mattie, who stated that Homoky knew the checks had been issued in error but nevertheless allowed the checks to be deposited into their joint account. Mattie stated that Homoky signed three of the checks himself and she signed the remaining four on his behalf and with his permission.

[5] As a result of an internal investigation, a notice of discipline was filed against Homoky and subsequently amended. The amended notice alleged three violations. Count I alleged that Homoky had used IDACS for non-law enforcement purposes by running Mattie's and Crowder's names and the license plates of vehicles parked in front of Mattie's home. Count III[2] alleged that Homoky had allowed the checks from Stardust Bowl to be deposited into his joint bank account with knowledge that he was not entitled to those funds. The notice alleged that Homoky's conduct violated various HPD Rules and Regulations and constituted grounds for discipline under I.C. § 36-8-3-

---

[2] Count II involved an alleged theft during a traffic stop, which a majority of the Board found was not proven by a preponderance of the evidence. Because Homoky was not found to have committed the conduct alleged in Count II, we need not discuss it.

4(b)(2)(B), (F), (G), and (H).  The notice indicated that HPD Chief of Police Richard Zormier sought Homoky's dismissal from the HPD as discipline for the alleged violations.

Homoky requested a hearing, and after protracted pretrial proceedings and exhaustive discovery, a four-day evidentiary hearing was held before the Board. On October 7, 2015, the Board unanimously voted to find Homoky guilty of the violations alleged in Counts I and III and to terminate his employment with the HPD.  Homoky filed a petition for judicial review on October 19, 2015. Meanwhile, at its next regularly scheduled meeting on October 21, 2015, the Board voted unanimously to approve its written Findings, Conclusions, and Decision regarding the termination of Homoky's employment.  Following oral argument, the trial court issued its order affirming the Board's findings, conclusions, and decision on August 10, 2016.  Homoky now appeals.

## Discussion & Decision

Our review of administrative decisions is very limited.  *Winters v. City of Evansville*, 29 N.E.3d 773, 778 (Ind. Ct. App. 2015), *trans. denied*.

> Deference is to be given by the reviewing court to the expertise of the administrative body.  Discretionary decisions of administrative bodies, including those of police merit commissions, are entitled to deference absent a showing that the decision was arbitrary and capricious, or an abuse of discretion, or otherwise not in accordance with law.  Further, review is limited to determining whether the administrative body adhered to proper legal procedure and made a finding based upon substantial evidence in accordance with appropriate

> constitutional and statutory provisions. . . . Substantial evidence is that relevant evidence which a reasonable mind might accept as adequate to support a conclusion.

*Id.* When determining whether a police officer disciplinary action was based on substantial evidence, a reviewing court may not judge the credibility of witnesses or weigh conflicting evidence. *Id.* at 778-79.

[8] Before turning to the merits of this appeal, we note that there are numerous deficiencies in Homoky's appellate briefing.[3] We first note that Homoky's Statement of the Issues does not correspond to the issues presented in the body of his brief. Indeed, one of the issues set forth in the Statement of the Issues— whether the Board erred in placing Homoky on unpaid administrative leave prior to his termination—is never discussed at all in his brief. *See* Ind. Appellate Rule 46(A)(4) (providing that the statement of issues "shall concisely and particularly describe each issue presented for review"). Homoky's Statement of the Facts contains virtually no substantive facts and instead is devoted to providing a recitation of procedural history better suited for the Statement of Case section of the brief. *See* Ind. App. R. 46(A)(5) (providing that the statement of the case shall briefly describe the nature of the case, the course of relevant proceedings, and the disposition of the issues by the trial court or administrative agency); Ind. App. R. 46(A)(6) (providing that statement of facts

---

[3] Homoky's appellate counsel also represented him during the administrative proceedings below. Although counsel's office is located in Chicago, he is an attorney licensed to practice in Indiana, and as such he is responsible for being familiar with the requirements for an appellate brief in this state.

shall describe the facts relevant to the issues presented for review, supported by citation to the record or appendix and stated in accordance with the standard of review). The Summary of the Argument Section is certainly not a "succinct, clear, and accurate statement of the arguments made in the body of the brief." *See* Ind. App. R. 46(A)(7). Rather, it consists largely of factual allegations not set forth in the Statement of Facts. To make matters worse, most of the "facts" set forth in the Summary of the Argument section are not supported by citation to the record, are irrelevant and often inflammatory, and/or not stated in accordance with the appropriate standard of review.

[9] The errors that have most hampered our appellate review, however, appear in the Argument section of Homoky's brief. In this section, Homoky's counsel continues to disregard the standard of review by relying upon evidence not favorable to the judgment and arguing that certain testimony is not worthy of credit. Homoky's counsel also fails to cite legal authority in support of many of his arguments, and some of the authority he does cite is inapposite.[4] Additionally, throughout his brief, Homoky's counsel has not cited to the volumes and pages of his Appendix as required by our appellate rules. *See* Ind. App. R. 22(C) (providing that "[a]ny factual statement shall be supported by a citation to the volume and page where it appears in an Appendix, and if not

---

[4] For example, in support of his argument that Mayor Snedecor should have recused himself from the Board, Homoky cites Ind. Code § 4-21.5-3-1, which he refers to as a "judicial canon". *Appellant's Brief* at 24. I.C. § 4-21.5-3-1 addresses service of process in proceedings under the Administrative Orders and Procedures Act, and we are at a loss as to its relevance to any of the issues Homoky presents.

contained in an Appendix, to the volume and page it appears in the Transcript or exhibits, e.g., Appellant's App. Vol. II p.5; Tr. Vol. I, pp. 231-32"). *See also* Ind. App. R. 46(A)(5), (6), (8) (providing that citations to the record must be made in accordance with Ind. App. R. 22(C)). Rather, where Homoky's counsel has provided citation to the record, he has cited to each item in the Appendix by its specific title or an abbreviation thereof and the page numbers of the individual document.[5] This has made review of Homoky's arguments unnecessarily cumbersome, particularly because Homoky has submitted a ten-volume Appendix and a six-volume Supplemental Appendix. Homoky's counsel has also cited to materials we have been unable to locate[6] and he repeatedly mischaracterizes items appearing in his Appendix.[7]

---

[5] Homoky's counsel has sometimes failed to provide page references at all. For example, in his Reply Brief, Homoky's counsel cites to an item submitted as offer of proof, which he refers to as "Spillman messages, Supplemental Appendix, Ex. 1". *Reply Brief* at 5, 12. These messages are hundreds of pages long and span more than four volumes of Homoky's Supplemental Appendix, yet Homoky's counsel has not provided page citations even when he purports to be directly quoting these messages. It is not our duty to scour the record—which is particularly voluminous in this case—in search of support for a litigant's contentions, and we decline to do so here. *See Legacy Healthcare, Inc. v. Barnes & Thornburg*, 837 N.E.2d 619, 639 n.29 (Ind. Ct. App. 2005), *trans. denied*.

[6] Homoky repeatedly cites to "Ex. 87" and "Ex. A to Grissom dep." *Appellant's Brief* at 24, 25, 29, 37. There is no Exhibit 87 listed in the Table of Contents to Homoky's Appendix, and although we have been able to locate the deposition of retired HPD Detective David Grissom, no exhibits are attached thereto.

[7] For example, in the Table of Contents, Homoky has listed a document he refers to as "Probable Cause Affidavit by Ogden". *Appellant's Appendix Vol. 1* at 3. The document referenced, however, is clearly not a probable cause affidavit, nor was it authored by Detective Ogden. Rather, the document is some sort of report prepared by one of Homoky's expert witnesses. *See Appellant's Appendix Vol. 5* at 134-137. He also cites this document in support of his claim that Mattie admitted that she is the one who picked up all of the paychecks from Stardust. *See Reply Brief* at 9. This document provides no support for this assertion.

Homoky also cites to three Facebook posts purportedly made by Detective Ogden's wife, Debbie Ogden, which he submitted as an offer of proof. According to Homoky's counsel, these posts "evince [Mattie's] and Debbie Ogden's friendship." *Appellant's Brief* at 32. Putting aside for the moment whether such a friendship is relevant to the issues at hand, the Facebook posts in question consist of vague references to liars and "bad

[10] Many of the errors in Homoky's Appellant's Brief are repeated and compounded in his Reply Brief. Specifically, the only citations to authority in Homoky's Reply Brief appear in a quote from the Appellees' Brief and in Homoky's prayer for relief. Further, Homoky spends much of his Reply Brief discussing evidence that is irrelevant and/or unfavorable to the judgment. For example, Homoky discusses at length the alleged misconduct of other HPD officers and the evidence presented concerning Count II, which the Board found had not been proven by a preponderance of the evidence.[8]

[11] "It is incumbent on appellate counsel to accurately represent the record and to provide cogent argument supported with adequate citation to authority." *K.S. v. D.S.*, 64 N.E.3d 1209, 1218 (Ind. Ct. App. 2016). Furthermore, an appellate brief "should not only present the issues to be decided on appeal, but it should be of material assistance to the court in deciding those issues." *Id.* (quoting *Young v. Butts*, 685 N.E.2d 147, 151 (Ind. Ct. App. 1997)). Far from being helpful, Homoky's briefing in this case has made our review of his claims unduly burdensome and time-consuming. We have nevertheless endeavored to address Homoky's arguments to the extent his deficient briefing allows. However, to the extent we have not addressed any specific argument set forth in

---

cops." *Appellant's Appendix Vol. 10*, p. 16-18. There is nothing whatsoever in these posts suggesting that Debbie Ogden even knew Mattie, much less that they had a friendship.

[8] Homoky asserts that the evidence establishes that another officer committed the misconduct alleged in Count II and that there was a conspiracy against Homoky. It is an understatement to say that the inferences Homoky asks us to make in this regard are strained. In any event, Homoky's arguments are nothing more than an invitation to reweigh the evidence and draw inferences unfavorable to the judgment, which Homoky's counsel should be well aware is not permitted under the applicable standard of review.

Homoky's brief, it is because we have found such argument to be waived for failure to make a cogent argument. *See Countrywide Home Loans, Inc. v. Holland*, 993 N.E.2d 184, 186 n.2 (Ind. Ct. App. 2013); Ind. App. R. 46(A)(8)(a).

## 1. Procedure

[12] Homoky claims that a number of procedural errors during the administrative proceeding deprived him of due process. "The tenure given a police officer 'is a constitutionally protected interest requiring the opportunity for a fair hearing conducted in good faith before a full and impartial body.'" *Sullivan v. City of Evansville*, 728 N.E.2d 182, 187 (Ind. Ct. App. 2000) (quoting *Atkinson v. City of Marion*, 411 N.E.2d 622, 628 (Ind. Ct. App. 2000)). "Where an officer's property right to continued employment is endangered, the administrative agency charged with determining whether to discipline the officer need not afford the officer all of the procedural safeguards found in a proceeding before a court." *Dell v. City of Tipton*, 618 N.E.2d 1338, 1342 (Ind. Ct. App. 1993), *trans. denied*. Rather, the administrative body must enforce standards of due process at the highest level workable under the circumstances. *Id.* *See also Jandura v. Town of Schererville*, 937 N.E.2d 814, 819 (Ind. Ct. App. 2010) ("With respect to administrative boards or panels generally, because they are often composed of persons without legal training, 'courts are reluctant to impose strict technical requirements upon their procedure.'" (citation omitted)), *trans. denied*.

*A. Mayor Snedecor*

[13] Homoky makes a number of arguments relating to Mayor Snedecor's position on the Board. Homoky first argues that Mayor Snedecor should have recused himself or, alternatively, been removed from the Board because he was biased against Homoky. "Due process in administrative hearings requires that all hearings be conducted before an impartial body." *Ripley Cnty. Bd. of Zoning Appeals v. Rumpke of Indiana, Inc.*, 663 N.E.2d 198, 209 (Ind. Ct. App. 1996), *trans. denied*. However, "in the absence of a demonstration of actual bias, we will not interfere with the administrative process. Instead, we presume that an administrative board or panel will act properly and without bias or prejudice."[9] *Jandura*, 937 N.E.2d at 819 (quoting *In re Change to Established Water Level of Lake of Woods in Marshall Cnty.*, 822 N.E.2d 1032, 1041 (Ind. Ct. App. 2005), *trans. denied*). "Furthermore, one may not allege bias and prejudice against a tribunal to escape the rigors of normal administrative procedure." *Adkins v. City of Tell City*, 625 N.E.2d 1298, 1303 (Ind. Ct. App. 1993).

---

[9] Homoky cites *Atkinson* for the proposition "that the fact-finding process should be free of suspicion or even the appearance of impropriety." 411 N.E.2d at 528 (citing *City of Mishawaka v. Stewart*, 310 N.E.2d 65, 69 (Ind. 1974)). Our Supreme Court has subsequently clarified that in *Stewart*, it "did not mean to say that the touchstone for determining due process was freedom from suspicion or appearance of impropriety[.]" *Rynerson v. City of Franklin*, 669 N.E.2d 964, 969 (Ind. 1996).

Despite acknowledging that Mayor Snedecor is not a judge, Homoky nevertheless argues that his participation on the Board violated Ind. Judicial Canon 2.11, which provides in relevant part that a judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned. He also cites federal case law applying 28 U.S.C. § 455, which requires federal judges to recuse "in any proceeding in which his impartiality might reasonably be questioned." These authorities are plainly inapplicable to the case at hand. This court has previously noted that "judges are held to a higher standard when it comes to conflicts of interest than are members of an administrative body." *Jandura*, 937 N.E.2d at 820. In order to prevail on his claim that he was deprived of a hearing before an impartial body, Homoky must establish actual bias, not merely that Mayor Snedecor's impartiality might reasonably be questioned.

[14]     Homoky argues that Mayor Snedecor was disqualified from serving on the Board because he had participated in the investigation of Homoky. The evidence concerning Mayor Snedecor's involvement in the investigation is thin. In a response to interrogatories, Detective Ogden stated that he had provided Mayor Snedecor with "[b]rief explanations of the investigation of Officer Homoky" between 2012 and 2013. *Appellant's Appendix Vol. 9* at 56. We note, however, that "[p]rior involvement in an investigation does not automatically bias or disqualify a safety board." *Adkins*, 625 N.E.2d at 1303. "[A]n adjudicator's exposure to investigatory case materials would deny due process to the party under investigation only if 'the special facts and circumstances present in the case [show] that the risk of unfairness is intolerably high.'" *Hearing and Speech Clinic of Evansville, Inc. v. Ind. Dep't of Welfare, Medicaid Div.*, 466 N.E.2d 462, 467 (Ind. Ct. App. 1984) (quoting *Withrow v. Larkin*, 421 U.S. 35, 58 (1975)) (alteration in original). Homoky has directed our attention to no evidence supporting a conclusion that such special circumstances exist here.

[15]     Homoky also makes a poorly developed argument that Mayor Snedecor was biased against him due to his involvement in an internal investigation into alleged improper towing procedures by HPD officers. In support, Homoky directs our attention to Grissom's deposition, in which he testified that Mayor Snedecor had instructed him to put an end to the investigation because it was harming officer morale. Grissom testified further that Homoky was one of several officers implicated in that investigation. It is unclear to us how Mayor Snedecor's decision to end an investigation into possible wrongdoing by a

number officers—including Homoky—establishes bias against Homoky. Homoky fails to explain the relevance of these matters, and we decline to develop an argument on his behalf. Homoky's claims in this regard are far too tenuous to compel a finding of actual bias. In sum, Homoky has not established that Mayor Snedecor's participation on the Board deprived him of an impartial hearing body.

[16] Homoky argues further that he should have been permitted to depose Mayor Snedecor and call him as a witness—which, we note, would necessarily have precluded him from serving on the Board. According to Homoky, Mayor Snedecor "had personal knowledge of material facts in the case" because "he played a role in the investigation into the Plaintiff's alleged wrongdoing." *Appellant's Brief* at 25. This argument is also poorly developed, and none of the scant authority cited in support is applicable. Accordingly, it is waived for lack of cogency. Waiver notwithstanding, we note that Homoky has not directed our attention to any evidence remotely suggesting that Mayor Snedecor had personal knowledge of the matters giving rise to the disciplinary charges at issue here, or even that he had personal knowledge concerning the investigation of those charges. Rather, it appears that any information Mayor Snedecor received was acquired secondhand from the investigating officers. Given the complete dearth of evidence that Mayor Snedecor had personal knowledge of any relevant facts, we find no due process violation resulting from the denial of Homoky's requests to depose Mayor Snedecor and call him as a witness.

### B. Presentation of Evidence

[17]     Homoky next argues that the hearing officer's exclusion of certain proffered evidence resulted in a deprivation of due process. "In general, administrative bodies are not bound by the strict rules of evidence." *City of Hammond, Lake Cnty. v. Ind. Harbor Belt R. Co.*, 373 N.E.2d 893, 899 (Ind. Ct. App. 1978). *See also Fornelli v. City of Knox*, 902 N.E.2d 889, 894 (Ind. Ct. App. 2009) (observing that police merit board hearings are administrative actions allowing for less formality than in civil proceedings before a court), *trans. denied*. A hearing officer has the authority to exclude evidence that is irrelevant, immaterial, or unduly repetitious. *Phegley v. Ind. Dep't of Highways*, 564 N.E.2d 291, 296 (Ind. Ct. App. 1990), *trans. denied*. A hearing officer likewise has discretion to limit the scope of cross-examination. *King v. City of Gary*, 296 N.E.2d 429, 461 (Ind. 1973).

[18]     Homoky argues that he was denied due process when he was not allowed to present certain evidence he claims shows bias on the part of several witnesses. *See State Bd. of Tax Comm'rs v. Aluminum Co. of Am.*, 402 N.E.2d 1316, 1323 (Ind. Ct. App. 1980) (noting that minimal due process in an administrative hearing requires that a party have the opportunity to rebut adverse evidence and cross-examine witnesses). We will address each claim in turn.

[19]     Homoky spends a great deal of time arguing that the hearing officer improperly excluded evidence he claims tended to show that Detective Ogden was biased against him. Any bias on Detective Ogden's part is irrelevant here. Although Detective Ogden conducted the bulk of the internal investigation of the disciplinary charges, it was the Board who ultimately decided whether and how

severely to discipline Homoky. *See Jandura*, 937 N.E.2d at 819. Moreover, even if we assume Detective Ogden harbored bias against Homoky, he had no personal knowledge concerning the matters giving rise to the disciplinary charges. Rather, Detective Ogden's testimony related to his own conduct and the manner in which he performed the investigation into the charges against Homoky.[10] Neither the City nor the Board relied on Detective Ogden's testimony to support the charges against Homoky.[11] Because Detective Ogden gave no testimony relevant to whether Homoky committed the charged misconduct, any bias on his part is irrelevant. In any event, Homoky was permitted to introduce into evidence a deposition from an expert witness in which alleged bias in the investigation is discussed at length.

[20] Homoky next argues that evidence concerning Mattie's alleged bad acts was improperly excluded. Specifically, Homoky asserts that he should have been permitted to present evidence concerning Mattie's 2003 check deception charge. He cites no legal authority for this argument, and it is therefore waived for lack of cogency. Waiver notwithstanding, we note that Homoky argues that this evidence was relevant to show that Mattie was solely responsible for cashing the Stardust Bowl checks. In other words, Homoky's counsel asserts that he should have been permitted to present classic propensity evidence. *See Wells v.*

---

[10] To the extent that Detective Ogden repeated any of the allegations made against Homoky by witnesses with personal knowledge, we note that it was Homoky who elicited such testimony.

[11] Indeed, it was Homoky who called Detective Ogden as a witness, and the City did not cross-examine him.

*State*, 904 N.E.2d 265, 270 (Ind. Ct. App. 2009) (explaining that it is improper to use proof of crimes, wrongs, or acts to prove the character of a person in order to show action in conformity therewith), *trans. denied*. This would plainly be improper. Evidence of Mattie's 2003 check deception charge, which was resolved by way of a pretrial diversion, was properly excluded.[12]

[21] Homoky also argues that he should have been allowed to present testimony that Mattie had engaged in various other bad acts. Homoky's counsel attempts to get around the obvious inadmissibility of this evidence by casting it as "reputation evidence" admissible under Ind. Evidence Rule 608. Even assuming that Rule 608 fully applies to the Board, this argument is meritless. As an initial matter, Homoky argues that such testimony would show Mattie's "reputation for stealing and writing 'bad' checks, etc." *Appellant's Brief* at 40. Rule 608, however, allows the introduction of evidence regarding only "the witness's reputation for having a character for truthfulness or untruthfulness[.]" Furthermore, Homoky sought not to introduce evidence of Mattie's reputation within the community. Rather, his offers of proof establish that he sought to introduce evidence of specific instances of misconduct, which is prohibited by Rule 608. *See Jacobs v. State*, 22 N.E.3d 1286, 1289 (Ind. 2015) (explaining that Ind. Evid. R. 608(b) prohibits the admission of evidence regarding specific

---

[12] Homoky clearly argues that evidence of Mattie's 2003 check deception charge should have been admitted as substantive evidence, not merely as impeachment evidence under Ind. Evidence Rule 609. Nevertheless, we note this evidence was not admissible under Rule 609 because it was resolved by way of a pretrial diversion agreement and did not result in a conviction. *See* Ind. Evid. R. 609 (allowing the admission of evidence of a conviction of a crime of dishonesty for the purpose of attacking a witness's credibility).

instances of misconduct).  The evidence to which Homoky refers was part and parcel of an ongoing attempt by Homoky to discredit Mattie by portraying her as a bad person.  Being prevented from fully pursuing that strategy did not deprive him of due process.

[22]   Next, Homoky argues that the exclusion of evidence concerning allegedly less severe discipline imposed on other HPD officers for misusing police equipment deprived him of due process.  Homoky has made no attempt to explain how such evidence is relevant to whether he committed the charged misconduct.  Alleged failure to discipline other officers is no bar to prosecuting disciplinary action.  *King*, 296 N.E.2d at 462.  *See also Davidson v. Perron*, 756 N.E.2d 1007, 1015 (Ind. Ct. App. 2001) (finding no abuse of discretion in limiting discovery relating to discipline of other officers because the officer's claim of retributive action "must stand or fall on its own merits").

[23]   Homoky also argues that his expert witness should have been permitted to give his opinion on whether Homoky should be dismissed for his misconduct.  This testimony was properly excluded as it sought to invade the province of the Board and amounted to a legal conclusion.  *See City of Columbia City v. Ind. Util. Regulation Comm'n*, 618 N.E.2d 21, 28 (Ind. Ct. App. 1993) (explaining that "[a]

legal conclusion is where an expert states his opinion as to how the case should be decided").[13]

[24] Homoky argues further that another expert witness should have been permitted to testify concerning Detective Ogden's alleged bias and its effect on the investigation. Homoky again fails to cite any authority in support of this argument, and he also fails to direct our attention to any specific testimony that he claims was improperly excluded. Consequently, this argument is waived. Waiver notwithstanding, we note that this expert gave an evidentiary deposition, which was heard and considered by the Board, in which he gave his opinion concerning bias among the investigators and material witnesses. There was no due process violation here.

### C. Other Procedural Claims

[25] Homoky makes several other procedural arguments, a number of which are waived for lack of cogency.[14] We will address Homoky's remaining arguments to the extent his deficient briefing allows.

---

[13] Homoky also complains that Chief Zormier was permitted to testify concerning his beliefs as to whether Homoky committed the alleged violations and Homoky should be disciplined. Homoky agreed at the hearing that Chief Zormier was permitted to testify to his beliefs on these issues. Accordingly, his argument in this regard is waived.

[14] Homoky's laches argument is waived for failure to cite authority. Homoky's spoliation argument is waived for the same reason, and we note further that his arguments on that issue are based on mischaracterizations of the record. We therefore decline to address either of these arguments on their merits.

[26] Homoky argues that the Board improperly issued two orders. Specifically, he characterizes the Board's unanimous vote at the conclusion of the evidentiary hearing to find Homoky guilty of the misconduct alleged in Counts I and III and to dismiss Homoky as one order, and the Board's written findings and conclusions, which were adopted at its next regular public meeting on October 21, 2015, as a second order. Homoky argues further that the Board lacked jurisdiction to enter this "second order" because Homoky had filed his petition for judicial review two days earlier.

[27] Yet again, Homoky cites no authority whatsoever supporting his contention that the Board is stripped of jurisdiction to enter specific findings—as required by statute[15]—immediately upon filing a petition for judicial review.[16] The City also notes that Homoky failed to object to the entry of the October 21 order, and argues further that Homoky "lacks the legal authority to unilaterally 'close' the Board's jurisdiction over the matter" by filing a petition for judicial review. *Appellees' Brief* at 28. In his reply brief, Homoky asserts—again without citation to authority—that his "filing for judicial review does, absolutely, deprive the Board of jurisdiction to issue specific findings subsequent to Homoky's filing in

---

[15] *See* I.C. § 36-8-3-4(e) (providing that "[t]he reasons for the suspension, demotion, or dismissal of a member of the police or fire department shall be entered as specific findings of fact upon the records of the safety board").

[16] By way of analogy, we note that a trial court does not lose jurisdiction immediately upon the filing of a notice of appeal. Rather, the appellate court acquires jurisdiction on the date the notice of completion of clerk's record is noted on the CCS. Ind. App. R. 8; *LBLHA, LLC v. Town of Long Beach*, 28 N.E.3d 1077, 1091 (Ind. Ct. App. 2015) (noting that the trial court orders issued after the notice of completion of clerk's record is filed are generally void).

the Circuit\Superior Court." *Reply Brief* at 10 (emphasis in original). Vehemence is no substitute for cogent legal argument. Homoky's argument is waived.

[28] Finally, Homoky argues that the trial court's order did not include specific findings as required by I.C. § 36-8-3-4(i), which provides in relevant part as follows:

> The court shall make specific findings and state the conclusions of law upon which its decision is made. If the court finds that the decision of the safety board appealed from should in all things be affirmed, its judgment should state that, and judgment for costs shall be rendered against the party appealing. If the court finds that the decision of the safety board appealed from should not be affirmed in all things, then the court shall make a general finding, setting out sufficient facts to show the nature of the proceeding and the court's decision on it.

[29] The trial court's order contained specific findings that the Board's decision was made pursuant to proper procedures, not arbitrary and capricious, and supported by the evidence. The trial court also specifically adopted the Board's findings as its own and incorporated them by reference, and found that the Board's findings, conclusions, and decision should be affirmed. These findings were adequate to comply with I.C. § 36-8-3-4(i).

## 2. Substantial Evidence

[30] Homoky also argues that the Board's findings that he committed the violations alleged in Counts I and III are not supported by substantial evidence. With

respect to Count I, the Board found in its written order that Homoky had been trained on the usage of IDACS and was aware that it was a violation to use IDACS for non-law enforcement purposes. The Board found that Homoky had nevertheless run fifteen IDACS queries of Mattie's name between June 24 and August 28, 2012, without a valid law enforcement purpose for doing so. Thus, the Board concluded that Homoky had violated HPD Rules and Regulations concerning the protection of confidential information and conduct unbecoming an officer, as a result of which he violated I.C. § 36-8-3-4(b)(2)(B) and (H), which provide that an officer may be disciplined upon a finding that he or she is guilty of a violation of rules or conduct unbecoming an officer, respectively.

[31] On appeal, Homoky does not dispute that he ran numerous IDACS queries of Mattie's name, but he argues that he had a law enforcement purpose for doing so. Most of his arguments, however, are directed toward whether he had a valid law enforcement purpose for running IDACS searches on Crowder. Because the Board's findings in Count I were premised solely on Homoky's IDACS searches of Mattie's name, his reasons for running IDACS searches of Crowder's name are irrelevant.

[32] Homoky's argument that he had a law enforcement purpose for running Mattie's name is not well developed, but seems to boil down to an assertion that he had carte blanche to run Mattie's name at will because "[a]t the time relevant, [she] was wanted in an unrelated matter for the crime of passing bad checks." *Appellant's Brief* at 16. Homoky's argument in this regard is disingenuous. In support of his claim, Homoky directs our attention to a

Chronological Case Summary indicating that Mattie was charged with check deception in 2003 and entered into a pretrial diversion program in 2004, which she appears to have successfully completed that same year. This CCS was ruled inadmissible and submitted only as an offer of proof, a fact Homoky's counsel fails to mention when making this argument. Homoky's counsel's reliance on this CCS as substantive evidence is therefore misplaced. In any event, the CCS does not support the claim that Mattie was being investigated for check deception or any other crime when Homoky ran her name on multiple occasions in 2012—approximately eight years after the check deception charge referenced in the CCS was resolved. The assertion by Homoky's counsel that Mattie was "wanted" for check deception at the time Homoky ran IDACS inquiries of her name is false, and counsel's claim that this charge could provide a legitimate, law-enforcement related purpose for his having done so is nonsensical.

[33] The evidence before the Board was that within the span of approximately two months, Homoky ran fifteen IDACS searches on his estranged wife, with whom he had a very contentious relationship. Furthermore, Mattie testified that on several occasions, Homoky told her that he had run her information through IDACS. One of the investigating officers testified that during the internal investigation, Homoky never offered any law enforcement purpose for running Mattie's name and, contrary to Homoky's assertions on appeal, there is no indication that Mattie was the subject of any police investigation at the relevant time. It is eminently reasonable to infer from these facts that Homoky

was using his position as a law enforcement officer to run Mattie's information and taunting her with his ability to do so in an attempt to harass, annoy, and intimidate her. The Board's finding that Homoky had no valid law enforcement purpose for running Mattie's name is amply supported by the evidence, as was is its conclusion that these actions amounted to a violation of rules and conduct unbecoming an officer. *See Appellees' Appendix Vol. 2 at 38-39* (HPD Rules and Regulations, defining conduct unbecoming an officer to include, inter alia, "[r]epeated discourteous treatment of a citizen or fellow officer" and "[o]verbearing, oppressive or tyrannical conduct in the discharge of duties").[17]

[34]     Homoky also argues that the Board's finding that he committed the violations alleged in Count III was not supported by substantial evidence. In its written order, the Board found that Homoky knowingly received the monetary benefit of the Stardust Bowl checks, which he knew he had not earned. Specifically, the Board found that the checks were picked up from Stardust by either Homoky or by Mattie with Homoky's knowledge. The Board further found that Homoky personally signed three of those checks and Mattie signed the

---

[17] Homoky also argues that there is no evidence to support the Board's finding that he violated the HPD rule regarding the protection of confidential information. Homoky does not, however, favor us with a citation to the language of that rule or any attempt to analyze whether his conduct fell within that language. Accordingly, this argument is waived for failure to make a cogent argument. Moreover, because we have already concluded that the Board's finding that Homoky violated the rules concerning proper use of IDACS was supported by substantial evidence, the finding that Homoky also violated the rule against disclosure of confidential information was not necessary to support the Board's finding that Homoky committed a violation of rules under I.C. § 36-8-3-4(b)(2(B). We conclude that any error in this regard was harmless.

remaining four, again with Homoky's knowledge and consent, and that Homoky knew the checks were deposited into his and Mattie's joint checking account. The Board concluded that these actions violated HPD rules prohibiting conversion, disregard for property rights, and conduct unbecoming an officer, and were grounds for discipline under I.C. § 36-8-3-4(b)(2)(B), (G), and (H).

[35] On appeal, Homoky argues that Mattie was solely responsible for the conduct alleged in Count III. His arguments in this regard are based on blatant mischaracterizations of the record. Homoky repeatedly claims that Mattie admitted to picking up the Stardust checks, "forging" Homoky's signature, and depositing the checks "independently of Homoky." *Appellant's Brief* at 12, 23. Mattie made no such admissions. Rather, she testified that she had possibly picked up a couple of the checks "[i]f [she] was told to", but she certainly had not picked up all seven of them. *Appellant's Appendix Vol. 3* at 118. Furthermore, Mattie reviewed copies of the checks and testified that Homoky had personally signed three of them and that she had signed his name to the remaining four, with Homoky's permission and at his direction. This is a far cry from admitting to forgery. Rather, Mattie's testimony indicated that she signed the checks as Homoky's agent, which is a perfectly lawful and very common practice between spouses. *See* Ind. Code § 26-1-3.1-402 (providing that a representative may sign an instrument "by signing either the name of the represented person or the name of the signer"); *Moehlenkamp v. Shatz*, 396 N.E.2d 433, 436-37 (Ind. Ct. App. 1979) (discussing the creation of agency

relationships between spouses). Likewise, although she testified that she might have been the one to deposit the checks into their joint bank account, she stated that she did so with Homoky's knowledge and consent. All of these findings were amply supported by the record, and Homoky's arguments to the contrary are nothing more than requests to reweigh the evidence and judge the credibility of witnesses.

[36] Judgment affirmed.

[37] Riley, J. and Crone, J., concur.